## Fraternal Aid Union *v*. Whitehead.

[87 South. 453, No. 21472.]

1. **Appeal and Error.** *Insurance. Where reasonable men may draw different conclusions from evidence, verdict not set aside; evidence showed insured railway mail clerk did not jump from car, but fell out.*

   The jury is the judge of the credibility of the witnesses and the weight of the evidence; and where the facts and circumstances are such that reasonable men may draw different conclusions therefrom, the verdict of a jury will not be set aside as being insufficient to support a verdict. The facts in this case examined, and *held* sufficient to support the verdict. (*Post, p. —.*)

2. **Insurance.** *Constitution of benefit society that no officer or agent might alter, modify, or waive provisions held void.*

   A provision in the constitution and by-laws of a benefit society that "no officer or member of the supreme lodge, except the supreme president by dispensation, nor any local or subordinate lodge or any officers or member thereof, or any organizer, deputy, or agent, shall have authority to change, alter, modify, or waive any of the provisions of this constitution," is void because a corporation, society, or individual cannot repeal he law of estoppel and waiver, and because said provision does not leave any officer or agent of the society who may act for it so as to bind it as to these subjects. *London Guarantee & Accident Co.* v. *M. C. Railroad Co.*, 97 Miss. 165, 52 So. 787.

3. **Insurance.** *Representations in application not warranties when made on explanation of manager of society.*

   Where a state manager of a benefit society whose powers are not limited by the by-laws of the society makes out an application for an applicant for a benefit certificate, and writes the answers to questions propounded to the applicant and interprets the meaning of such questions and writes answers after having the full facts explained to him by the applicant, the answers will not be held warranties so as to avoid the certificate issued thereon, even though not literally true. If they are not false, considered in the light of the facts made known to the agent, or if not false in the light of his explanations of the meaning and purpose of the questions asked, they will not avoid the policy or certificate.

APPEAL from circuit court of Hinds county.

HON. W. H. POTTER, Judge.

Action by Mrs. Julia A. Whitehead against the Fraternal Aid Union. Judgment for plaintiff, and defendant appeals. Affirmed.

*Wells, Stevens & Jones* and *A. J. Calhoun,* for appellant.

The testimony for both plaintiff and defendant neither raised nor left an issue for the jury and the court should have peremptorily found for the defendant or have so directed the jury. See: *Continental Casualty Co.* v. *Hardenberg,* 83 So. 278.

The next error of the court upon which we rely for reversal of this case and judgment here, was that of overruling the demurrers of the defendant to plaintiff's amended replications to the third and fourth pleas of the defendant, and the granting of the instructions numbers 2 and 5 for the plaintiff.

This action of the court was in palpable violation of the provisions of section 20 of the uniform Fraternal Beneficiary Law adopted by the state of Mississippi and which appears as section 5192, of Hemingway's Code, heretofore copied herein, this Fraternal Beneficiary Code has been enacted in thirty-two states of the Union and was adopted by the legislature of Mississippi in 1916. A determined effort was made to have this section of the code repealed by the legislature of state of Mississippi at its session in 1920, but after a hearing thereon the bill for that purpose was defeated.

The theory upon which the learned circuit judge below acted and ruled as he did, was that Mr. Reagan, who was the local organizer of the local lodge of the defendant, could and did waive for the defendant order in certain material particulars provisions of the contract of insurance and in advising the applicant to falsely answer the question propounded to him, by his action the com-

pany was estopped to set up the false answer made by the applicant as set forth in the application, upon the faith of which the defendant acted.

Section 106 of the constitution of the defendant has been copied hereinbefore in full. In addition, however, to this provision of the constitution, which probably was not before the applicant at the time of his application and in order that no wrong might be done by anyone thereby, there is printed in the application itself, immediately before the signature of the applicant the following provision which was expressly agreed to by the applicant when he made his application for insurance, to-wit:

"I hereby agree and declare that all statements and answers made by me herein to be warranties, and in all respects full, true and complete; that such statements and answers were written by my direction and read over by me before the signing of this application, and that said statements and answers have been in no way or manner affected or induced by any agent, officer or representative of the Fraternal Aid Union and I hereby agree for myself and my beneficiary or beneficiaries, if any one or more of such answers or statements are false, untrue or fraudulent, the benefit certificate which may be issued to me shall be null and void and of no effect.

It will therefore be seen that not only was this section 106, enacted in compliance with said section 20 of the Fraternal Beneficiary Act, and should be enforced by this court, but also in order that no harm might be done, the applicant was expressly warned to make his answers full, true and complete, and not to be influenced by any advice of officious representatives who seem to think they know more about what the medical directory should pass upon as being material to the risk than such medical directors who have given years of study to the proposition.

But whether or not this court should agree with us upon the wisdom of this law enacted by the legislature, it appears to us, with great deference that this is utterly immaterial. That was a matter for the legislature and

the legislature has not only acted and passed the law, but has declined to repeal this very provision.

This section is one of the most important of what is considered the model fraternal beneficiary law approved by the insurance commissioner of this state, by the National Insurance Commissioner Association, and as above stated, is now rapidly being adopted by all of the states of the Union, governing fraternal beneficiary companies.

It should be remembered that instead of being a commercial corporation, the defendant is a fraternal benefit society. In recent years the courts have recognized the fact that insurance on the fraternal plan, with mutuality and without profit distinguishes the work of such an association from a commercial enterprise, and the association should not be measured by the standard, or determined by the legal principles which are applicable between an ordinary insurance company and the holder of one of its policies.

Every member, in fact stands in the peculiar situation of being party of both sides, insurer and insured, and the members of the association are, so to speak partners. *Newman* v. *Supreme Lodge K. of P.,* 70 So. (Miss.) 241; *Thomas* v. *Knights of the Maccabees,* 149 Pac. 7; *Royal Arcanum* v. *Green,* 237 U. S. 531.

Unless this court, therefore, we respectfully submit, is prepared to declare null and void this section of the law of Mississippi and hold it unconstitutional for some reason unknown to us, or do as the lower court did, hold that the legislature could not have meant what the law plainly provides, then, we respectfully submit that the action of the lower court is palpably erroneous and contrary to the provisions thereof and will have to be reversed and judgment entered here for this defendant.

Under almost precisely similar facts and under exactly the same provision of law, our sister state of Alabama recently sustained the validity of this law and denied recovery in the case of *Woodmen of the World* v. *McHenry,* 73 So. 97. Likewise our sister state, Louisiana, on the

west has upheld said section 20 in a very recent case of *Bargainer* v. *Knights of Maccabees,* etc., decided May 31, 1920, 85 So. 57.

Likewise, the state of Tennessee on the north has upheld that exact provision in the case of *Simmons* v. *Sovereign Camp, Woodmen of the World,* 188 S. W. 941. See, also, the following authorities directly in point: *Vant* v. *Grand Lodge Knights of Pythias,* 86 S. E. 677 (S. C.); *Currence* v. *Sovereign Camp, Woodmen of the World,* 78 S. E. 442 (S. C.); *Woodmen of the World* v. *Wernett* (Texas), 216 S. W. 669; *Greyson* v. *Grand Temple, etc.,* (Texas), 171 S. W. 489; *Hubbard* v. *Modern Brotherhood,* 93 S. W. 911; *Hartman* v. *National Council, etc.,* 175 S. W. 212 (Mo. App.); *Thompson* v. *Modern Brotherhood,* 189 Mo. App. 15, 176 S. W. 506; *Brittenhan* v. *Sovereign Camp W. O. W.,* 67 S. W. 587, (Mo. App.); *Baycock* v. *Sovereign Camp W. O. W.,* 155 N. W. 923, (Wis.); *Sternheimer* v. *Order Commercial Travelers,* 93 S. E. 8 (S. C.); *Klein* v. *Supreme Council Loyal Association,* 163 N. Y. Sup. 5; *Supreme Court Riess* v. *Supreme Conclave, etc.,* 164 N. Y. Sup. 878; *Woodmen of the World* v. *Hall,* 104 Ark. 538, 148 S. W. 526, 41 L. R. A. (N. S.) 517; *Sumelim* v. *American Fraternal Stars,* 167 N. W. 844 (Mich.); *Davis* v. *National Council, etc.,* 196 S. W. 97; *Sov. Camp W. O. W.* v. *Anderson,* 200 S. W. 698 (Ark.).

Even before the passage of the so-called New York conference bill, the uniform fraternal bill above referred to by us, containing said section 20 many of the states upheld the validity of such by-laws providing against waiver and estoppel by local lodges and officers thereof. *Dillon* v. *National, etc.,* 244 Ill. 202; *Supreme Council* v. *Taylor,* 121 Fed. 66; *American* v. *Hardiman,* 124 Ga. 379; *United Order* v. *Hooser,* 160 Ala. 334; *Borgrafe* v. *Knights of Honor,* 22 Mo. App. 127; *Bixler* v. *Modern Woodmen,* 112 Va. 678.

We are utterly at a loss to understand upon what theory the learned circuit judge below ruled as he did in the face of said section 20. We respectfully submit that the

case should be reversed and judgment entered here for the defendant. Again, the demurrer to the amended replications to the third and fourth pleas should have been sustained on the second ground thereof, which is as follows: "The deceased in his application, which becomes a part of the contract and filed as exhibit 1, to the second plea of the defendant contracted as follows with defendant herein to-wit:

"I hereby agree and declare that all statements and answers made by me herein to be warranties, and in all respects full, true and complete; that such statements and answers were written by my direction and read over by me before the signing of this application, and that said statements and answers have been in no way or manner affected or induced by any agent, officer or representative of the Fraternal Aid Union, and I hereby agree for myself, and my beneficiary or beneficiaries if any one or more of such answers or statements are false, untrue or fraudulent, the benefit certificate which may be issued to me shall be null and void and of no effect and plaintiff is estopped to plead either waiver or estoppel.

We submit that appellee is in no position to plead waiver and estoppel in the face of the provision of the application quoted in the above ground of demurrer, after the appellant had acted on the good faith and truthfulness of the warranty and statements contained in said agreement, and after the decedent had obtained insurance on the faith and truthfulness thereof; in short, after the appellant had changed its position from a probable insurer to an insurer in fact on the strength of that warranty and agreement appellee was and is estopped to plead estoppel and waiver. He is estopped by his contract to claim that his answers were not correctly reduced to writing. See 21 C. J., Estoppel, secs. 114-4; *Benes* v. *Supreme Lodge, etc.*, 231 Ill. 134, 14 L. R. A. (N. S.) 540; *Metropolitan Life Ins. Co.* v. *Dimick,* 69 N. J. L. 384, 62 L. R. A. 774; 2 Joyce on Insurance, p. 1231, sec. 502, and cases there

cited; *Fitzmanrain* v. *Mutual, etc.,* 84 Texas, 61, 19 S. W. 301.

In view of the above position taken by us under one and two, all instructions granted for the plaintiff were erroneous and we will not further argue them, except as the argument above made applies to each.

*Teat & Potter,* for appellee.

The evidence of the plaintiff on the suicide issue tended to prove that the deceased bore a good reputation in his community for honesty and fair dealing; that his family relations were happy, pleasant and congenial; that he promptly took care of his obligations; was a good father and husband and when in Jackson spent most of his time at home. Of course, the only theory upon which these questions were asked by us was to prove that he was not a man who would rifle mail or commit suicide and it is clearly competent as tending to prove these facts.

We must insist, with all due deference to opposing counsel that the evidence together with the fact that he was suffering with vertigo, and with the presumption against suicide in our favor raises a question of fact for the jury to pass on.

Point Two. The second error urged by the defendant why the case should be reversed and remanded is that under section 20 of Chapter 206, of the Acts of 1916, the local organizer could not waive any of the provisions of the laws of the company. Our answer on this point is threefold: (a) That section 20 and any by-law adopted thereunder could only apply to a member and not to an applicant; (b) That the constitution adopted by defendant did not state that any local agent could not waive any provision or question in the application but could not waive any provision of the constitution and (c) even if defendant did not waive the question it is now estopped from setting it up as a defense.

The pleas relied on by the defendant are to the effect that Whitehead breached his warranty in stating that he had not been treated by a physician during the past five years.

Counsel states that Whitehead deliberately and willfully misstated the facts to the agent of the defendant, Mr. Regan, on this point and therefore a peremptory instruction should have been given to defendant. He states in his brief that the evidence shows that Whitehead falsely answered the question propounded by Regan on this point. Let us consider the evidence on this feature of the case.

Taking up the last first and turning to page 139, of the record, we here find that Mr. Regan testified that he always asked applicant not whether they had ever been treated by a doctor in regard to personal ailments within the past five years, but had the applicant been seriously sick during the last five years, and unless there was a serious illness he would always write "no."

"Almost everybody has been sick during five years, bad colds, or a little fever or something; but those things are not supposed to be answered 'yes' there unless you have been confined to your bed and had a physician in regard to personal ailment. If you say 'yes' they would have to give the date, every time they had a cold and unless they are of a serious nature they are always answered 'no' by an insurance man."

In regard to the two pleas Mr. Regan stated that Whitehead told him that he had had a policy of one thousand dollars in the Lamar Life but had let it lapse. He stated that the reason that he (Regan) wrote that Whitehead had the policy in the Lamar Life was because he did not know whether or not Whitehead had any extended insurance thereunder and then, too, in order to let his company know the applicant had been passed as an acceptable risk by another company.

He states in regard to the fractured leg that he knew that Whitehead hurt his leg some time before but that

he considered it immaterial. He was intimately asso-
ciated with Whitehead for a number of years and knew
that he suffered no evil effect from the fracture and knew
that it had completely healed.

Appellant contends that section 20 of chapter 206, of
the Acts of 1916, which reads as follows: "The consti-
tution and laws of the society may provide that no sub-
ordinate officer shall have the power or authority to waive
any of the provisions of the laws and constitution of the
society and that the same shall be binding on each and
every member thereof on all beneficiary members," to-
gether with the by-laws adopted thereunder, which reads
as follows:

"No officer or member of the supreme lodge, except the
supreme president by dispensation, nor any local or sub-
ordinate lodge or any officer or member thereof or any
organizer shall have the power to modify or waive any
of the provisions of the constitution" prevents the agent
of defendant from waiving a complete answer in the ap-
plication.

We contend first that this section twenty, which says
"members" and not applicants shall be bound by the laws
of the order and that the same cannot be waived, ought
not to be binding upon one before he becomes a member.
It is very well to declare that a member shall be bound
by the laws of his order for he is presumed to know them,
but it would be, it seems to us, the Alabama case to the
contrary, notwithstanding the worst sort of fraud to hold
that one, who has never even seen the laws of the defend-
ant; who has never even had a chance to see them and
who is dealing with the duly authorized agent of the
defendant, cannot rely upon what that agent tells him
concerning the answers he shall make to questions in the
application.

We cannot believe that this court will thus let down
the bars for fraud and perfidy by so holding. This strain-
ed construction, for it is a strained construction because
it would have been extremely easy for the legislature to

have said member and applicant should they have meant the applicant, would be imputing to the legislature the desire and purpose of being a party to every such fraud that would undoubtedly be perpetrated upon innocent victims, should this court place this construction upon the act.

But let us suppose for the sake of argument, that the proper construction was placed on the statute in the McHenry case. In that case the Woodmen of the World adopted this by-law under the act: "No officer, agent, etc., shall have the right, power, or authority to waive any of the conditions upon which the beneficiary certificates are issued. . . ."

There is some semblance of reason to hold as the court did in the *McHenry case, supra,* that the applicant was bound by the agent's acts. But did this defendant adopt the same or a similar provision under section 20? It did not. Its law adopted thereunder is as follows: "No officer . . . or any organizer . . . shall have the authority to waive any provision of this constitution."

Nowhere does the constitution of the defendant state that the organizer shall not waive provisions in the application as did the constitution of the Woodmen of the World in the McHenry case. And it is a fundamental rule, which applies to benefit societies as well as old line companies, that the policy and all parts of the contract are construed most strongly against the insurer. Surely it is not the same thing to say that no agent has the power to waive any part of the constitution and to say no agent has the power to waive any part of the constitution in the application. Suppose that an extremely careful man who was familiar with section 20, would apply for a policy with defendant. Let us further suppose that he would ask to see the portion of the constitution adopted under section 20, and he would there read: "No organizer shall have the power to waive any provision of this constitution."

He would then read the entire constitution carefully and when the organizer took his application he would answer, as Whitehead did, the questions asked, and the organized would write the answers down, as Regan did in the present case. Would this applicant have read anything to put him on notice that Regan did not have the power to answer as he did? We think not and should this defendant attempt to lay a trap for the unwary who put their faith in the agents of the defendants, they should do so in plain, unambiguous terms. In other words, to take advantage of the statute, should this court hold that it is an instrument of fraud and not of protection; that it is a sword and not a shield; it should come clearly within the statute, which we submit, it has not done in the present case.

Our last point on this question is that even if our first two answers on this question are not well taken, then the defendant is estopped from raising a breach of warranty as the action of their agent was responsible for the acts of Whitehead. While waiver and estoppel are similar terms there is a fundamental difference. Waiver is the relinquishment of a known right, while estoppel is the act of a person whereby he places another in such a position as would make it inequitable for the first to take advantage of the position taken by the latter at the instance of the former. As stated by Bacon in his work on Benefit Societies, 2nd Vol., p. 1431:

"Waiver is the relinquishment or refusal to accept a known right, while estoppel is the preclusion of a person to assert a fact, by previous conduct inconsistent therewith on his part or on the part of those under whom he claims."

As stated by a Vermont case, *Webster* v. *Insurance Company*, 69 Atl. 319, while the terms "waiver" and "estoppel" as applied to the laws of insurance are usually construed the same, yet there are essential differences between them. Waiver is the intentional relinquishment of a known right and does not necessarily imply that one has

been misled to his prejudice while estoppel is the acts or conduct of both parties and may arise where there is not an intent to mislead and also involves the misleading of one to his prejudice.

The court will bear in mind that the statute involved is in derogation of the common law and should therefore be strictly construed. Here we find Regan, without any fraudulent intent it is true, but nevertheless misleading Whitehead in the matter of the one thousand dollar policy with the Lamar Life in the matter of the broken leg and in the matter of vertigo to his prejudice. The statute nowhere states that the defendant cannot be estopped by the action of its agents, and we contend that we have a clear case of estoppel.

ETHRIDGE, J., delivered the opinion of the court.

The appellee filed a suit against the appellant on a certificate of fraternal insurance issued upon the life of Hubert T. Whitehead, who came to his death by jumping or falling from a railway mail car on the Gulf & Ship Island Railroad Company.

The application for a certificate by Whitehead contained, among other things, the following stipulations:

"I hereby agree, in consideration of the issuance to me of a benefit certificate, that the contract between the Fraternal Aid Union and myself shall be this application, and the accompanying medical examination, and the benefit certificate to me and the constitution and laws of the said Fraternal Aid Union, now in force or hereafter adopted, including all amendments hereafter made."

"For myself and my beneficiary or beneficiaries, I agree further that all interests, rights and benefits which may or shall have accrued by reason of my membership in said order shall, in case of my expulsion from, or the voluntary severance of my connection with, said order, or in the event of my failure to comply with or violation by me of the constitution or laws of said the Fraternal Aid Union

now in force or hereafter adopted, including all amendments hereafter made, be absolutely forfeited and determined."

"I hereby agree for myself and my beneficiary or beneficiaries that any physician or surgeon who may have attended me for any illness or injury is hereby directed and authorized to impart to, and any duly authorized representative of said society shall be entitled to receive from, any such physician and surgeon a full statement of any matters which may have come to his knowledge in his professional capacity while so attending me, and I further agree that, notwithstanding the law, or laws, of any state or territory rendering incompetent or privileged the testimony of any physician or surgeon as to matters coming to his knowledge in his professional capacity, in case of suit brought to recover on any benefit certificate issued to me by said the Fraternal Aid Union, the testimony of such physician or surgeon with regard to such matters shall be admissible in evidence.'

"I hereby agree and declare that all statements and answers made by me herein to be warranties and in all respects full, true, and complete, that such statements and answers were written by my direction and read over by me before the signing of this application, and that said statements and answers have been in no way or manner affected or induced by any agent, officer, or representative of the Fraternal Aid Union, and I hereby agree for myself and for my beneficiary or beneficiaries, if any one or more of such answers or statements are false, untrue, or fraudulent, the benefit certificate which may be issued to me shall be null and void and of no effect."

"Have you in the past five years been treated by or consulted any physician in regard to personal ailment?  A. None."

"What illness, disease, or injuries have you had since childhood?  A. None."

The policy issued on this certificate contained the following, among other things:

"This certificate is based upon the application of the member to whom the same is issued and the medical examination accompanying the same, and said application with said medical examination, the articles of incorporation, the constitution and laws of the association now and hereafter adopted, and this certificate constitute the agreement between the Fraternal Aid Union and said member."

Section 20, chapter 206, Laws of Mississippi of 1916 (section 5192, Hemingway's Code), reads as follows:

"The constitution and laws of the society may provide that no subordinate body, nor any of its subordinate officers or members shall have the power or authority to waive any of the provisions of the laws and constitution of the society, and the same shall be binding on the society and each and every member thereof and on all beneficiary members."

Section 106 of the constitution and laws of appellant reads as follows:

"No officer or member of the supreme lodge, except the supreme president by dispensation, nor any local or subordinate lodge or any officers or member thereof or any organizer, deputy or agent, shall have authority to change, alter, modify or waive any of the provisions of this Constitution."

Section 53 of the constitution and laws of appellant reads as follows:

"If any member shall die or suffer injury in any way on account of any act on his part which is a violation of any law of the state in which he or she is, or of the United States, while engaged in the commission of a crime or while escaping from an officer of the law or in flight from arrest, he shall thereby forfeit all rights of membership and all moneys paid, and all rights under his certificate."

Section 62 of the constitution and laws of the appellant reads as follows:

"(d) If death of any person who now is or shall hereafter become a member shall be due to suicide, whether sane or insane, voluntary or involuntary, conscious or un-

conscious, the full liability of the association shall be the amount actually paid by the member to the benefit fund.

. . .

"(f) That each and every promise, waiver, guarantee or other matter set forth in the application and signed by the member is a part of the contract between the member and the association as fully as though fully set forth in the certificate issued to the member, the same as though they were a part of the Constitution of the association."

The appellant in defense pleaded the general issue and special pleas setting up the several sections of its constitution and the above provisions from the application for insurance and the quotation from the policy in defense of the action, and also filed notice under the general issue setting forth in substance the provisions and averring breaches thereof by the deceased, and alleging that the deceased came to his death either by suicide by willfully jumping from the train, or that he was attempting to flee arrest and came to his death by reason of trying to escape arrest.

The replication of the appellee to these several pleas set up waiver and estoppel on the part of the appellant by reason of the fact that the agent of the appellant, the state manager, made out the application for the deceased, and that the deceased disclosed to the agent the real facts, and that the agent interpreted the questions in the application for the certificate by the deceased by stating that the questions referred to illnesses of a serious nature, and especially to those coming within a period of five years next preceding the time of the application for the certificate, and that the agent of appellant taking the application had full knowledge of the real facts as disclosed by the evidence, and by reason thereof the appellant had waived the provisions and was estopped by the conduct of its agent from relying upon the said defenses, and that the knowledge of the agent was the knowledge of the appellant.

Demurrers were filed to the replications and overruled by the trial court, and the cause was submitted to a jury, who found for the plaintiff on the issues submitted.

On the hearing the proof for the defendant on its affirmative defenses as to suicide and as to escaping arrest was the testimony of a post officer inspector who testified that he and another inspector entered the railway mail car on which the deceased was employed on the day of his death at Wiggins, Miss., and proceeded to examine the business of the mail service, and found in a compartment of said car certain letters which had been rifled or opened; that thereupon they informed the deceased that he could continue his run until he reached Gulfport, at which time he would be relieved of his key and commission as railway mail clerk and turned over to the proper authorities; that as they approached Landon, a flag stop on the Gulf & Ship Island Railroad, the deceased had placed the catcher arm, an appliance used on the mail car in the service for catching mail appended to a crane to take up mail without stopping the train, and that he was looking out of the car doors on approaching this station, and placed his hand on the catcher arm and swung or jumped out of the car, while the train was crossing a ravine or creek, and in falling or descending from the car to the ravine deceased struck a sill, which resulted in his death.

The proof for the appellant also consisted in the introduction of the application with the answers written therein containing the provisions therein set out, and the introduction of an application to the Lamar Life Insurance Company upon which a policy was issued, but which had been discontinued by reason of the nonpayment of the premiums, in which application deceased stated that he had suffered a broken leg or ankle in the year 1901, said application being made in 1907, and the application in the recent case, being issued in 1918, did not disclose this injury. The application in the present case stated that the applicant had one thousand dollars insurance in the Lamar

Life Insurance Company, which was not true in fact, because of the lapse thereof as above stated.

The appellee introduced the manager of the appellant, who made out the application of the deceased, who testified in support of the replication above set forth, stating that the applicant stated the facts to him, and that he knew of the injury and of the lapse of the policy, but that he put down the answer as he did for the reason that he thought there might be extended insurance keeping the policy in force, and also because it showed that the applicant had been approved as an insurance risk by an old line insurance company, and that he wrote the answers to questions with reference to medical treatment as he did because he did not regard slight illnesses of any importance, and that he so stated to the deceased in explaining the questions to him, and that it was the practice of all insurance agents in this territory not to note illnesses and injuries that were not of consequence or which were not regarded as serious.

The appellee also proved by a physician that the deceased had been treated at intervals for a period of four or five years for vertigo, which was described as being "swimming in the head," and as being a symptom produced by indigestion and toxins resulting from indigestion; that the effect of the vertigo was to cause blindness and swimming in the head, a flow of blood to the head, and a relaxation of the muscles.

The appellee also introduced a porter on the train from which the deceased fell or jumped who testified that he was on the steps of the colored passenger coach, which was next to the express car and about forty feet from the mail car, and that he saw the deceased when he fell; that he came out sideways and the porter thought at first that it was a mail pouch; that deceased's head struck the sill on the trestle, but his cap was not knocked off, and that when the car in which the porter was riding passed over the place where the deceased fell that deceased's body was "still jostling where he fell;" that the porter did not see

the body when it left the car, but saw it almost immediately thereafter.  He was asked:

"Q.  How near to the ground was it when you first saw the body?  A.  He hadn't more than got out of the door; I don't know whether he was clear out the door.  Q.  You didn't see him when he left the door?  A.  I never seen his body—I didn't see his body when it whirled out.  Q. You said awhile ago you thought it was a mail pouch till it almost hit the ground?  A.  I says I thought it was a mail pouch?  Q.  Yes.  Now you couldn't swear whether he came out feet foremost or head foremost, could you?  A.  Yes, sir; because I know a man's body from his head.  Q.  He was clear of the car and clear of the bridge when you saw him?  A.  No, sir."

On redirect examination the porter stated:

"I don't know whether he jumped out or fell out; I couldn't say, because I was not in the car, and the door was too narrow for a person to lean around to see anybody.  Q.  How did his body go out?  A.  His body went out kinder sideways; that is the position I saw it; and he was just leaving the top of the door as I caught sight."

The appellant insists that it was entitled to a peremptory instruction for several reasons, one of them being that the proof by the plaintiff in rebuttal or contradiction of the post office inspector is not sufficient for the jury to find that the deceased did not jump out of the car, and that there was in reality no conflict between the post office inspector's testimony and that of the plaintiff upon this fact.

Taking the physician's testimony as to the effect of the vertigo in connection with the testimony of the negro porter as to how the deceased's body fell, we think there was such contradiction as would authorize a jury to find for the plaintiff on this issue.  Taking all that all the witnesses said upon this proposition, we think the jury could draw a conclusion that the deceased fell from the car rather than that he jumped from the car, and as the jury so found by their verdict, and as the burden to show the fact on

this issue was on the defendant, this point is not well taken.

We come now to the effect section 106 of the constitution and laws of the appellant, and section 20, chapter 206, Laws of Mississippi of 1916 (section 5192, Hemingway's Code), have upon the application of the deceased.

It is earnestly insisted by the appellant that the testimony of the manager was incompetent because the language of section 106 of the constitution and laws of the appellant:

"No officer or member of the supreme lodge, except the supreme president by dispensation, nor any local or subordinate lodge or any officers or member thereof or any organizer, deputy, or agent, shall have authority to change. alter, modify, or waive any of the provisions of this constitution"

—prevents the act of the manager from being the act of the appellant. If this provision of appellant's constitution is given effect as written, no element of estoppel could ever be attributed to the appellant, nor could it be held to have waived anything unless the "supreme president" of appellant should waive it "by dispensation;" in other words, there would be no waiver except by the express order of the appellant's president amounting to a "dispensation."

The law of waiver and of estoppel does not depend upon contract. The waiver may be made by conduct and action as well as by words, and no contract can repeal the law upon this proposition. Estoppel is predicated upon the doing of a thing by a party which causes another person to act or change his situation by reason of such act of the other party as would make it inequitable or unjust to permit the party to assert to the contrary.

There must at all times be some person who can represent the appellant in such way as to create an estoppel or to create a waiver, and the provisions of the appellant's constitution above set out do not provide or leave room for this rule to operate. We do not feel that we have any

authority to eliminate a portion of the said section so as to make it stand. It must stand or fall upon its validity as written. This court has had occasion to pass upon this proposition before, and it has held that a company cannot eliminate the law so as to escape the consequences of its act that would result in waiver or estoppel if the company was an individual.

In the case of *London Guarantee & Accident Co.* v. *M. C. Railroad Co.*, 97 Miss. 165, 52 So. 787, it was held that a stipulation in a written contract to the effect that its provisions shall not be waived by parol is ineffectual, as much so as would be a parol agreement not to contract in writing. And that a stipulation in a contract executed by a corporation to the effect that its terms could not be waived by any agent or officer is not aided by the claim that the power to waive was confined to the corporation itself, since a corporation can act only by agents and officers. A clause relied on in that case reads as follows:

"The assured shall not voluntarily assume any liability, nor shall the assured, without the written consent of the company previously given, incur any expense or settle any claim except at his own cost, or interfere in any negotiation for settlement or any legal proceedings, except that the assured may provide at the time of the accident, such surgical relief as is imperative. Whenever requested by the company, the assured shall aid in securing information and evidence and the attendance of witnesses, and in effecting settlements and in prosecuting appeals."

And the policy contained a provision that its provision could not be waived by any officer or agent. In that case the railroad company had sued the Guarantee & Accident Company for money to reimburse itself for certain moneys paid out by the railroad company in settlement of certain personal injury claims, and the Guarantee & Accident Company's first defense was that the claim should not have been paid under the terms of the policy without the written consent of the Guarantee & Accident. Company. The court in that case, quoting with approval from the

case of *Home Insurance Co.* v. *Gibson,* 72 Miss. at page 64, 17 So. at page 14, as follows:

"It is in vain to say that this clause does not seek to prevent the corporation itself from waiving a stipulation. The corporation acts only through agents; and, if 'no agent, no officer, and no other representative' can waive a stipulation, who is left to waive it for the corporation? This clause is a species of refinement by which the corporation withdraws within its invisible and intangible ideality when liability is sought to be imposed upon it, bound by the acts of no agent, officer, or other representative, but reaches forth therefrom with Briarean hands to receive the profits and avails of these same acts performed by these same "agents,' as against those with whom those same agents have dealt. The refinement is too subtle for the practical affairs of actual life, and we repudiate it."

The court then quotes from authorities in this and other states to sustain its conclusion, and reversed and remanded that case for a new trial.

In the case at bar the state manager of appellant was appointed by the "supreme president" of appellant, and the "supreme president" had full control under its constitution and by-laws of the management of this department of the work, and selected and removed its managers and physicians, and passed upon the applications for insurance, and had full power to direct the manager's activities, and to make rules and regulations by which the manager would act and be governed. There is no definition of the manager's powers in the appellant's constitution and by-laws, but he acts for the "supreme president" in the performance of certain duties which are confided by the constitution and by-laws to the "supreme president." He was an agent of the appellant, and knowledge coming to him must be the knowledge of the appellant, as he was acting for the appellant under the direction of the "supreme president." This agent or manager testifies, showing that he had knowledge of the material matters upon which the policy was issued, and that he made out the application

on his interpretation of the meaning and purpose of the question propounded. He also testifies that the assured did not read the application and answers over, but signed them as written, according to his recollection.

It is said that the application agrees that the answers to the questions are to be treated as warranties, and that as a matter of fact the answers were not true as stated, and, regardless of its effect upon the risk, the policy is voided. The answers as written in the light of the interpretation placed upon the questions would not constitute a breach of warranty, but upon a literal construction of the questions would constitute breaches of warranty.

As the applicant was led by the agent of the appellant to place a construction on the questions and answers and was led to answer the questions on the theory that the appellant was seeking material facts, we think it is a case where the company would not be permitted to avail of the defense of warranties brought about in this manner, especially as to warranties having no real relation to the risk. The applicant had no power to select the manager, and we think the doctrine of warranties is not applicable and available as a defense under the facts shown in this record. There is much reason in the explanation of the manager that it would be impractical to note every slight illness or every consultation with a physician, and that it would not be the purpose of the appellant in writing insurance to seek information that would have no practical value.

In *Planters' Ins. Co.* v. *Myers,* 55 Miss. 479, 30 Am. Rep. 521, it was held that a printed provision in a policy of insurance that—"It is part of this contract that any person other than the assured, who may have procured this insurance to be taken by the company, shall be deemed to be the agent of the assured, . . . and not of the company, under any circumstances whatever, or in any transaction relating to this insurance"—cannot convert the agent who procured the application and made the contract of insurance on behalf of the appellant into an agent

of the assured. It is the duty of an applicant for insurance to disclose all facts material to the risk, but, if he does so, and the agent of the appellant, acting within the scope of his powers, deemed these matters immaterial, and so writes the answers in the application for the applicant. the appellant would not be permitted to defend on the ground that the answers were not true within the literal meaning of the words used in the application.

In the case of *American Life Ins. Co.* v. *Mahone,* 56 Miss. 180, it was held that, if the agent of an insurance company undertakes the preparation of an application for insurance in his company, and by mistake or omission fails to write down correctly the applicant's answer to a question propounded, the company will be bound by such answer, just as if it had been written down in the language used by the applicant, and presented thus to the company for its action.

In *Mutual Reserve Fund Life Association* v. *Ogletree,* 77 Miss. 7, 25 So. 869, this court held:

"If the agent of an insurance company be fully advised of the facts, and write or advise false answers to the inquiries contained in the written application, his principal cannot avoid the policy because of such answers."

In *Lewis* v. *Mutual Reserve Fund Life Ass'n,* 27 So. 649, this court held that, where on the death of the insured, an illiterate negress, the defendant company refused to pay the policy because of falsehood in answering certain interrogatories in the application, and the plaintiff, the beneficiary, gave notice of proof that the insured was old and unable to read, that all questions asked her she truthfully answered, that the application had not been read over to her or signed by her, and that she did not know its contents, and that the false answers were made solely through the fraud of defendant's agent taking the application, it was error to strike this notice from the files as insufficient, and to grant a peremptory instruction for the defendant. See, also *Phenix Ins. Co.* v. *Bowdre,* 67 Miss. 620, 7 So. 596, 19 Am. St. Rep. 326; *L. & L. &*

*G. Ins. Co.* v. *Sheffy,* 71 Miss. 919, 16 So. 307; *Big Creek Drug Co.* v. *Stuyvesant Ins. Co.,* 115 Miss. 561, 76 So. 548; *Stewart* v. *Coleman Co.,* 120 Miss. 28, 81 So. 653.

If the facts in this case showed that the deceased had written the application or had it done by his agent, and that the appellant had no knowledge of the facts misrepresented, the deceased and the beneficiary claiming through him could not set up that they had not read the application, but the facts in this case present an entirely different situation. The representations were not false if the questions called for the information which the state manager interpreted them to call for. This case must be treated in our opinion just as though the applicant for the certificate was dealing personally with the president and the president had performed the acts that the state manager performed. Certainly an insurance company could not be deemed to desire information as to insignificant and slight ailments which had existed a long time prior to the application. A fraternal insurance company ought to be held to be dealing fairly with its members, seeking information which is material to the risk and not weaving a web to entangle prospective members in. It is true parties have a right to make contracts, and they may choose their own terms and form of contract, and may impose such conditions and restrictions not violative of law or public policy as they may desire, but it is equally true that they may waive provisions of a contract, and that they may so act as to estop themselves from asserting a fact that they ought not to assert under the rules of fair conduct.

The learned circuit court, we think, reached the correct conclusions on the law of the case, and the facts are sufficient to uphold the verdict, and the judgment is affirmed.

*Affirmed.*