MASSACHUSETTS PROTECTIVE ASS'N v. CRANFORD.*

(Division A. Dec. 15, 1924.)

[102 So. 171. No. 24497.]

1. INSURANCE. *Conflicting evidence made question one for jury.*

Whether insured committed suicide was question for jury, where evidence was conflicting.

2. INSURANCE. *Where insurer received timely notice of insured's death, authority of agent to receive notice was immaterial.*

Where insurer in fact received timely and ample notice of insured's death from agent, it was immaterial whether agent was general agent authorized to receive notice.

3. INSURANCE. *Failure to make proof of loss did not preclude recovery where due to insurer's failure to furnish blanks.*

Beneficiary's failure to make proof of loss did not preclude recovery, where she was precluded from so doing by insurer's failure to furnish blanks.

4. EVIDENCE. *Parol evidence admissible to explain written release.*

Parol evidence was admissible to prove that written release, containing indorsement that amount received was in full settlement of all claims of liability under policy, was given merely to cover sick indemnity, and not insurer's liability on policy on insured's death.

5. INSURANCE. *Certificate issued by bureau of vital statistics, stating that death was "suicidal," held not admissible.*

In action on accident policy involving issue of whether insured committed suicide or met his death accidentally, certificate of death issued by bureau of vital statistic under Hemingway's Code, section 4872, stating that death was "suicidal," *held* not admissible, since the certificate should have merely stated that cause of death was gunshot wound.

6. INSURANCE. *Rule as to burden of proof on issue of whether insured committed suicide, stated.*

In action on accident policy, in which the insurer denied that death was accidental and claimed that insured had committed suicide, the burden was upon plaintiff to prove accident upon the whole case, but insurer had burden of overcoming legal presumption against suicide.

7. EVIDENCE. *Presumption against suicide.*
   Presumption is that a decedent did not commit suicide.

---

*Headnotes 1. Accident Insurance, 1 C. J., section 337; 2. Accident Insurance, 1 C. J., section 187; 3. Accident Insurance, 1 C. J., section 201; 4. Evidence, 22 C. J., section 1526; 5. Accident Insurance, 1 C. J., section 296 (1926 Anno); 6. Accident Insurance, 1 C. J., section 284; 7. Accident Insurance, 1 C. J., section 278; Evidence, 22 C. J., section 35.

APPEAL from circuit court of Forrest county.
HON. R. S. HALL, Judge.

Action by Mrs. Sallie Cranford against the Massachusetts Protective Association. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

*Stevens & Heidelburg,* for appellant.

This suit was upon a health and accident policy of insurance issued by appellant to and in favor of Daniel W. Cranford, husband of appellee. The policy insured the said Daniel W. Cranford whose occupation was a stock broker or dealer, against loss from: "(1) Bodily injuries effected directly and independently of all other causes by accidental means (excluding self-destruction or any attempt thereat, while sane or insane); and (2) disability from disease." For accidental death the policy provided an indemnity of five thousand dollars in favor of assured's widow, Mrs. Sallie L. Cranford, appellee here.

The policy sued on contained, amongst other standard provisions, the following: "Written notice of injury or of sickness on which claim may be based must be given to the Association within twenty days after the date of the accident causing such injury or within ten days after the commencement of disability from such sickness.

"Such notice given by or in behalf of the insured or beneficiary, as the case may be, to the Association at its Home Office, Worcester, Massachusetts, or to any author-

ized agent of the Association, with particulars sufficient to identify the insured, shall be deemed to be notice to the Association. Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible.

''The Association upon receipt of such notice, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not so furnished within fifteen days after the receipt of such notice, the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting within the time fixed in the policy for filing proofs of loss, written proof covering the occurrence, charter and extent of the loss for which claim is made.''

The declaration contained no averment that proofs of loss were furnished in accordance with the requirements of the policy and no averments of circumstances excusing the plaintiff from furnishing proofs of loss.

We confidently submit that the testimony of the plaintiff at the conclusion of the plaintiff's case in chief, should have been excluded because of the failure of the declaration or allege compliance on the part of the plaintiff with the condition of the policy requiring notice of accidental death and requiring the furnishing of proofs of loss. These provisions of the policy have been quoted hereinabove, and compliance therewith is a contractual condition precedent to the right of the plaintiff to recover.

This court has held that a declaration which fails to allege compliance with a condition of a policy requiring proofs of death or facts excusing compliance, states no cause of action and will not sustain a default judgment. *Penn. Mutual Life Ins. Co.* v. *Keeton*, 95 Miss. 708, 49 So. 736, and authorities therein listed and reviewed. The Keeton case just cited is referred to and approved in the case of *Odom* v. *Gulf & Ship Island R. R. Co.*, 57 So. 626.

The declaration does not allege, neither does the proof show that any proofs of loss whatever were ever furnished appellant in this matter. We are aware of the holdings of this court under section 3127, Code of 1906; Section 2491, Hemingway's Code, in the cases of *Assurance Company* v. *Walker,* 99 Miss. 404; *Standard Ins. Co.* v. *Broom,* 111 Miss. 409, 71 So. 653; *Stuyvesant Ins. Co.* v. *Smith Motor Sales Co.,* 99 So. 575, to the effect that all stipulations and contracts changing the period within which suits must be brought under our statutes of limitations shall be null and void.

There may be a difference of opinion as to when this notice must be given, whether within the period expressly and specifically stated in the policy or whether within the period of limitation provided by the statute for all written contracts, and likewise there may be difference of opinion as to the time limited for furnishing proofs of loss. Yet there can be no difference of opinion that notice and proofs must be furnished in accordance with the provisions of the policy, whether within the shorter period limited in the policy or the statutory period, the giving of the notice and the furnishing of the proof unless waived or excused by the conduct of the company, are essential conditions precedent to the beneficiary's right to recover the indemnity provided by the policy.

In this connection we confidently submit that the lower court proceeded upon an erroneous conception of the relation of S. B. Williams, the local collector, to his company, appellant here. Williams was no agent of the company in the sense that he could receive notice of a claim for loss under the policy or in the sense that he could waive any essential provision of the policy. He was merely a local collector clothed with the authority to collect premiums from policyholders in his community. He was certainly not a general officer of the company nor was he such an "authorized agent of the Association" as is contemplated by section 5 of the "Standard Provisions" of the policy. Section 5078, Heming-

way's Code; section 2615, Code of 1906, defines who constitutes an agent of an insurance company. The section has been construed in a number of cases. *Big Creek Drug Co.* v. *Stuyvesant Ins. Co.,* 76 So. 548; *Germania Life Ins. Co.* v. *Bouldin,* 56 So. 609; *Stewart* v. *Coleman & Co.,* 81 So. 653; *New York Life Ins. Co.* v. *Odom,* 100 Miss. 219, 56 So. 379; 1914-A Ann. Cas.

The court below was in error in holding that Williams was an agent of the appellant and that notice to him was notice to the appellant. The lower court, also, erred in admitting over the objection of appellant evidence to the effect that Mrs. Cranford wrote a letter to appellant after Mr. Cranford's death and after she received the voucher for three hundred fifty dollars, and gave this letter to Williams to mail to appellant. The letter, if such a letter was written was the best evidence and no predicate had been laid to introduce any other evidence of its contents, no notice was given to produce the original, no carbon copy was offered.

We call the court's attention to the case of *McPike* v. *Western Assurance Co.,* 61 Miss. 37, which is in point upon the proposition that we are urging here, namely, that the provision of the policy with reference to proofs of loss is valid and compliance therewith or a valid excuse for non-compliance therewith essential to recovery.

Did the appellee meet the burden of proof which was on her to show that the death of Mr. Cranford was due to accidental causes, excluding self-destruction or any attempt thereat, while sane or insane? The burden of proof was upon appellee to prove that Mr. Cranford's death was due to accident and was not due to self-destruction or suicide. An introduction of the defense of suicide did not shift the burden. 1 C. J. 496, 498; *Belt Automobile Indemnity Association* v. *Ensley Transfer & Supply Co.,* 99 So. 787; *U. S. Casualty Co. of N. Y.* v. *Malone,* 87 So. 896; *Travelers' Protective Association of America* v. *Malone,* 87 So. 986.

All the witnesses admit, and the certificate upon which the claim for health benefits was based, together with the proof of loss made out for the purpose of collecting the health or disability benefits, agree that Mr. Cranford suffered a nervous break-down, that he had a serious stomach trouble, that he had nervous indigestion, that he lost considerable in weight, that he consulted at least four different physicians, some of whom at least were supposed to be eminent in their profession and specialists, that he was seriously concerned about the outcome of his illness, had periods of despondency, was unable to pursue his regular vocation, was forced to recall Mr. Williams, his former employee, to assist his son in carrying on his livestock business, and felt that it was very doubtful whether or not he would recover.     The admissions of appellee, his wife, are sufficient to show that Mr. Cranford was in a very seriously impaired state of health, that he was concerned about himself, that he frequently prayed, sometimes out loud, that he was so weak and nervous as that his own wife was unwilling to trust him alone with a gun, and that he was under indictment for embezzlement of public funds and must, of course, have been seriously concerned about the outcome of that prosecution.     Mr. Cranford was in a very abnormal state of health and in an abnormal state of mind, he could not attend to his business, and Mr. Williams and J. C. Cranford, the son of Mr. Cranford, conducted the business.     Mr. Cranford would seem uneasy about his business, was apprehensive about his ultimate recovery, he made the statement that if he did not get some relief he could not live, he acted queerly on at least two or three occasions when Mr. Williams discovered him peeking through the cracks of the barn where the mules were kept, would seem embarrassed and turn away instead of entering into conversation, and generally appeared to be in a bad state of health and mind.

Mr. Lightsey was a clerk in the store at Seminary at and prior to the time of Mr. Cranford's death. On the afternoon before Mr. Cranford's death, he and his boy, a youth of fourteen or fifteen years of age, came into the store and talked to Mr. Lightsey for a few minutes. The boy went out and Mr. Cranford started out but came back and asked for some gun shells, and when asked how many, he said, "I will take a box of buck shot." Mr. Lightsey replied that No. 4 was the largest he had. He then asked for about five of those and Mr. Lightsey sold him five shells. When Mr. Lightsey asked Mr. Cranford why he wanted buck shot, he answered, "I just want to keep my gun loaded around the house." The witness Williams testified that he assisted J. C. Cranford in making out the proofs of loss which were submitted as a basis for collecting disability benefits. The original of this proof is attached to the record. This proof shows that at that time J. C. Cranford, G. T. Cranford, the family physician and relative, and S. B. Williams all considered that Mr. Cranford, while suffering from the nervous trouble described, maybe with other complications, committed suicide. That was evidently the information which those three intimate friends and neighbors of Mr. Cranford, two of them his near relatives, one being his own son, considered true and accurate. Upon this proof the three hundred fifty dollars referred to was paid and Mrs. Cranford, appellee here, got the benefit of it. She was consulted about this, evidently. Mr. Williams further testified that it was the common report that Mr. Cranford committed suicide and that it never occurred to him to question his suicide as a fact. In none of his conversations with Mrs. Cranford herself, did he ever gain any other impression than that her husband had committed suicide. The only notice that appellant is shown to have had of his death, until the attorneys for Mrs. Cranford advised otherwise nearly a year later, was contained in the said proof of loss which carried on its face information to the company that Mr.

Cranford had committed suicide. There was no hint in this proof, and it was made up after Mr. Cranford's death, that his death was due to accident. The delay in presenting this claim and filing this suit is itself a very strong circumstance going to show that it was the general opinion, especially the opinion of the family, that Mr. Cranford committed suicide and that his death was not accidental within the coverage of the policy. The very exclamation of the son, J. C. Cranford, when he rushed into the house after the report of the gun, threw open the door and found his father dead, with the top of his head blown off, is eloquent of the opinion then prevailing as to the real cause of this man's death. It is undenied that he was found sitting about midway a couch which was located inside of a guest or spare room which was not then being occupied by anyone else, the door to which was closed, that he was leaning back against the wall against which the back of the couch extended, his hands hanging to his side, his gun resting with the butt of it to the left of his outstretched feet, the muzzle of the gun pointing toward him, the top of his head blown off, the load having entered the head just above and a little to the rear of the right ear, and no one else present who could have done the shooting. Mr. Cranford's bedroom was across the hall from the room in which he was shot. It was winter time and he would not naturally have sought out the guest or spare room to recline or sit down in. Mrs. Cranford testified that the gun was in a room to the rear of the guest room, behind the dresser. Evidently, Mr. Cranford, therefore, had gone into the room where the gun was, which was commonly called the boys' room, gotten the gun and then gone into the guest room, sat down upon the couch with the single barrel shot gun and, holding the point of muzzle of the same to the right side of his head, pulled the trigger and, as the gun fired, involuntarily dropped the gun in such position as that the muzzle of it remained in a position pointing toward himself. If he had set

the butt of the gun down on the floor while in a standing position and holding the same by the barrel, naturally when he received his wound, he would have thrown the gun toward the middle of the floor and, most likely, with the barrel pointing the other way. There is no reasonable theory upon which he could have met his death by an accidental discharge of the gun and been left reclining as he was and with the gun pointing in his direction as it was. Any other theory than deliberate, intentional self-inflicted injury would be the rankest sort of speculation in view of these physical facts, and when these facts are taken in connection with the previous condition of Mr. Cranford, it is manifest to our minds, and we think it must be to any reasonable mind, that Mr. Cranford committed suicide. The case reminds us very much of the case of *Knights of Honor* v. *Fletcher*, 78 Miss. 377, 29 So. 523 and *Fletcher* v. *Woodmen of the World*, 81 Miss. 249, both of which cases involved the death of one D. B. Noah who was found dead in his bed with a pistol wound through his head, the bullet having entered the head, "just above and in the rear of the right ear, passing out just above and in rear of left ear." The court, speaking through Justice CALHOON in the former case, and Justice WHITFIELD in the latter case, held that the proof showed suicide rather than accidental death.

The contention of counsel for appellee in the lower court is that the presumption against suicide applies in this case since, as they contend, the immediate cause of the explosion of the gun is explained by any eye-witness and no threat of suicide by Mr. Cranford is shown, or sufficient circumstances showing that he intended to commit suicide. Certainly the usual presumption against suicide will not stand in the face of the facts hereinbefore adverted to. The presumption, whether it be called a presumption of law or a presumption of fact, is a rebuttable presumption and in this case must give way in the face of the physical facts attending the death, and the many antecedent facts and circumstances shown in

the proof.  Certainly any *prima-facie* case made by this presumption is overwhelmingly refuted by the proof in the case.  The presumption is not evidence itself but only a rule of law as to which party shall first proceed and go forward with the evidence to prove an issue.  We cite the court to the various definitions and treatment of presumptions, found at 6 Words & Phrases, 1st Series, 5535, et seq.; 3 Words & Phrases, 2d Series, 1165, et seq., *Brunswick* v. *Standard Accident Ins. Co.,* 7 A. L. R. 1223, et seq.

It must be borne in mind always that the burden of proof remained on the plaintiff in this case throughout. *Railway Co.* v. *Groome,* 97 Miss. 208; *First National Bank* v. *Ford,* 31 A. L. R. 1441; *Cunningham* v. *State,* 56 Miss. 269, 31 Am. Rep. 360.

We have not mentioned or considered the effect of the certified copy of the record of death of Mr. Cranford offered in evidence by the defendant below and which was excluded by the lower court. It is our earnest contention that this certified copy of the record of death containing, as it did, the certificate of death filed by the local registrar, G. T. Cranford, who was, also, as shown above, the personal physician of Mr. Cranford, is admissible in evidence under section 4872, Hemingway's Code, and is *prima-facie* evidence, as the statute provides, of the truth of the facts therein stated; that the certificate is competent evidence of the cause of death, especially in cases where, as appellee here contends, the cause of death would be otherwise unexplained.  This court had section 4872, Hemingway's Code, under consideration in the case of *Hunt* v. *Hunt,* 127 Miss. 683, but the court reserved its opinion and decision upon the precise question here under consideration.

The reason underlying the creation of the Bureau of Vital Statistics of the state are apparent and the maintenance of such departments of the state is common throughout the country.  They serve an exceedingly useful purpose, preserving as they do accurate records of

births and deaths and other vital statistics, and valuable statistics for the use of the state board of health in adopting health measures for the good of the people and to aid the state in keeping a watchful eye on the health and social conditions obtaining throughout the state, and applying, where necessary, corrective measures. The work of such a bureau in connection with the work of the state board of health, of which it is a part, serves a tremendously important scientific and social and governmental use.

The reports made by the local registrars are apt to be accurate, especially where, as in this case, the registrar happens to be the personal physician of the deceased, and they are usually made up from information that at the moment is of common report and well understood and easy to verify at the time.

If the certified copy referred to was admissible in evidence in this case, as we contend it was, then the certificate made out a *prima-facie* case of suicide, utterly negativing the presumption against suicide and casting the burden again upon the plaintiff to prove accidental death. Certainly, the *prima-facie* case which this certified copy of the record of death made, the certificate being evidence by virtue of the statute and such strong evidence as to make out a *prima-facie* case, demolished the presumption that would otherwise be indulged where the death was unexplained that the same was due to accident rather than suicide. The presumption could not stand in the face of this instrument which is made evidence by the statute sufficient to create a *prima-facie* case of suicide.

It has long been the policy of this state to admit in evidence copies of public records required to be kept by public custodians, as will be noted from the several statutes on the subject beginning with section 1956, Code of 1906, and running through a number of sections following the latter section. We especially cite the court to section 1968.

If the motion of the defendant to exclude the evidence and direct a verdict for the defendant should not be sustained, then the case is one for the jury. We confidently rely upon the contentions hereinbefore made that a verdict should have been directed for the defendant, but if the court should disagree with us on this point. it is certainly true from all the evidence in this record, including the certificate of death, that the case is one to go to the jury and not one for a directed verdict in favor of the plaintiff.

Appellee was bound by the settlement which she made with appellant after the death of Mr. Cranford, when she cashed the voucher furnished her and which she endorsed and the terms of which she thereby approved and became bound by.

The voucher contained these words: ''The endorsement hereon to be in full settlement of all claims of any further liability under said policy.'' Language could not be broader and the court would not be justified in considering oral testimony to explain away the plain language of this voucher. There are no circumstances of fraud or imposition shown and the document speaks for itself and operates as a full release of the company from any further liability under the policy.

The judgment of the lower court should be reversed and judgment entered here for appellant.

*Tally & Mayson,* for appellee.

The policy provided that upon due proof of sickness that it would pay assured the sum of fifty dollars per week during the period of said sickness. He made a claim, under the provisions of the policy, for seven weeks, at fifty dollars per week, claiming that the company owed him the sum of three hundred and fifty dollars. This claim was pending at the time of his death, hereinafter mentioned.

On the 10th day of December, 1922, while the policy was in full force and effect, the assured was accidently killed in his house, at Seminary, Mississippi. His death was brought about by the accidental discharge of a gun. No one was present, no one saw it, but the facts and circumstances surrounding the case showed conclusively that it was accidentally, and not designedly, done, as the load entered from behind, penetrating his head at the base of the skull to the left of the right ear.

The company had a local agent at Seminary. It procures a class of persons, or risks, to be insured. The agent takes the applications and forwards them, together with the fees, to the home office. The home office then issues policies to the various members of the class, or to such as are considered desirable risks. On the 15th of December, 1922, the local collector, one S. B. Williams, submitted a notice to the assured for his claim for sickness, or total disability, the statement containing these words: "Totally disabled from October 25, 1922, to December 12, 1922." In this notice their local collector volunteered to the appellant, as stated in the same, the following information: "The insured while suffering from above stated troubles (maybe with other complications) committed suicide and likely would be advisable for you to settle with the beneficiary, Sallie L. Cranford, or Administrator, J. C. Cranford. Any other information desired communicate with me. S. B. Williams, (Local Collector)."

Shortly after that, about the first of the year, 1923, this man Williams went to Mrs. Cranford's house, when she wrote the company a letter, going into details concerning her husband's death. She never received any response to this letter. About the first of October, 1923, the matter was placed with the firm of Tally & Mayson, lawyers, Hattiesburg, Mississippi, for attention. Under date of October 10, 1923, the firm wrote the appellant, at its post office address, advising that they held policy for collection, and requested it to furnish the necessary

proof blanks for making proof of death, so that the proof might be furnished before taking legal steps.

Under date of October 16, 1923, the claim agent of appellant responded to that letter. To plaintiff's declaration in this case, the defendant pled, first, the general issue; second, that it was not given due and timely notice of the death of the deceased; and in the same plea, that the assured committed suicide; third, that there was an accord and satisfaction, and that defendant was released from any obligations under the policy by the payment of the three hundred fifty dollars mentioned.

Both sides having requested a directed verdict, and neither side having requested any other instruction, they thereby took the case from the consideration of the jury and made the judge the trier of the law and the facts. Simkins Federal Practice, 109; 38 Cyc. 1582; *Williams* v. *Vreeland,* 250 U. S. 295, 63 L. Ed. 989.

Among many well considered authorities supporting the proposition that the trial judge cannot originate independent instructions are: *Bangs* v. *State,* 61 Miss. 363; *Lindsey Wagon Co.* v. *Nix,* 108 Miss. 814, 67 So. 459; *Williams* v. *State,* 32 Miss. 389; *Edwards* v. *State,* 47 Miss. 581. The defendant pled that the assured committed suicide, and that plaintiff was not entitled to recover. Every presumption is against suicide. *Redmen's Frat. Assn.* v. *Rippey,* 50 L. R. A. (N. S.) 1006.

The presumption is against suicide, and the burden of proof is upon the one who asserts it as a fact to prove it by a fair preponderance of the evidence. *Lindahl* v. *Supreme Court Independent Order of Forresters,* 117 Am. St. Rep. 606, 100 Minn. 87, 110 N. W. 358.

The presumption of love of life is so great as to repel the implication of suicide. 22 C. J., sec. 35, pp. 94, 95; *Supreme Conclave Imperial Order of Heptasophs* v. *Miles,* 84 Am. St. Rep., 528; *Canal-Commercial T. & S. Bank* v. *Employers' L. A. Corp.,* 99 So. 542.

The physical facts show that the position of the deceased after his death, the situation of the gun with

reference to him, the place on his person where the wound was inflicted, to-wit, the back of his head, coupled with the fact that he had given no intimation to anyone, either directly or indirectly, that he expected to take his own life, supports the contention that, while the wound was probably self inflicted, it was done accidentally, and not designedly. All his conversations at a period near his death showed that he was getting better. Appellee and her attorneys gave the appellant sufficient notice of the death of the assured, and gave it an opportunity to make investigation for itself, if it desired to do so.

As we have already set out in the statement of facts, the appellant's agent at Seminary, on the 15th day of December, mailed a notice that the assured was dead, and if they desired further information to communicate with him. The appellant then received notice that the assured was dead, its agent volunteering the information that he committed suicide. So far as the record shows, it did not follow up this information by making any further investigation respecting the death of the assured, but contented itself with paying the three hundred fifty dollars that it owed under the sick benefit of the policy before his death. Not only did it receive that notice, but the beneficiary wrote it a letter after that, giving the details of the death, as near as she could, and requested some satisfactory adjustment of her claim. The appellant paid no attention to that. When she employed counsel, they requested the appellant to furnish blanks of proofs, if it wanted, or needed, any further. Counsel did not know, of course, what had been done about that, and out of abundant caution, gave it an opportunity to get such proofs on its blanks.

Notice is for the purpose of advising the insurer of the death and claim. *Carrell* v. *Nat'l Accident Co.*, 130 Am. St. Rep. 294.

The initial notice received through its agent contained the statement that the assured committed suicide. Acting on that information, it not only declined to furnish

blanks, but pled non-liability under the policy on that theory.

Where an insurer disclaims liability under an insurance policy, it is unnecessary for insured to furnish · proof of loss. *Atlantic Horse Ins. Co.* v. *Nero,* 108 Miss. 321, 66 So. 780, and cases cited; 1 C. J. 478; *Hawthorn* v. *Travelers Protective Assn.,* 29 A. L. R. 494; *Ward* v. *Maryland Casualty Co.,* 93 Am. St. Rep. 514.

Defendant pled that all it was due under the policy was three hundred fifty dollars as sick benefit. The assured then was under no further obligation to furnish any further proof. 1 C. J. 478.

The certificate furnished by the secretary of the state board of health was not admissible in evidence and if admissible, its exclusion could harm no one. The certificate referred to, if admissible at all, could only be admitted for the purpose of establishing the death of the assured, and nothing more. If it was admissible on that theory, its exclusion was absolutely harmless, for the reason that the death of the assured had been abundantly established by witnesses adduced by both sides. The insistence is, that if a certificate of that kind is properly authenticated, and the rules and regulations of the state board of health duly proved authorizing its issuance, that it could be used only for the sole purpose of proving the death of the party it relates to.

The Laws of 1912, chapter 149; Hemingway's Code, Volume 2, section 4868, provides for a Bureau of Vital Statistics and that the state board of health shall provide an adequate system for the registration of births, deaths, etc. Section 4872 of the same Act provides, that any copy of the records of birth, sickness or death, when properly certified to, shall be *prima facie* in all courts of the facts therein stated. In the instant case, there is nothing to show that the state board of health had ever promulgated any rules and regulations for gathering the data mentioned. Before the certificate itself could properly be admitted in evidence, the appellant would

necessarily have to show that rules had been promulgated pursuant to Code of 1906, section 3409; Hemingway's Code, Volume 2, section 5939, and until that was done, the alleged certificate was not admissible in evidence. *Covington County* v. *Pickering,* 123 Miss. 20, 85 So. 114.

It is true that in one state, by a divided court, that it was held that the certificate of an attending physician, where he stated all the facts with reference to the demise of his patient, was admissible in evidence, though in the same state there was a statute with reference to privileged communications between physician and patient. An examination of that case and the authorities collected in the annotation thereto, seems to show that that rule is peculiar to the state promulgating it, or at any rate, it announces the minority rule. There is a dissenting opinion concurred in by two of the five judges constituting the court, and both the reason and the weight of authority occurs to us is found in the dissenting opinion. *Lucas Bozicevich* v. *Kenilworth Mercantile Co.* (Utah), 17 A. L. R. 346, 199 Pac. 406.

It will be observed from reading the opinion in chief that the statute of the state itself provides the form of the physician's certificate in great detail; amongst other things, it is said that the physician "shall further state the cause of death, so as to show the course of disease, or sequence of causes resulting in death, giving the primary and immediate causes, and, also, contributory causes, if any, and duration of each. Indefinite and unsatisfactory terms, indicating only symptoms of disease, or conditions resulting from disease, will not be held sufficient."

In the statute itself it also. appears that the form of the certificate is set out. In the instant case, the pretended certificate, based on the alleged report of Dr. Cranford, states nothing but conclusions. It is alleged that the cause of death was as follows: "Suicidal." So we, therefore, respectfully insist that, though the cer-

tificate was properly admissible in evidence, it couldn't throw any light on the situation, since the witnesses on both sides had gone into detail respecting the death of the assured. No reversible error was, therefore, committed, even though we concede that the alleged certificate was admissible in evidence. *Ladner* v. *Ingram Day Lumber Co.*, 100 So. 369; 38 Cyc. 1458; 76 Miss. 458; 52 Miss. 487.

The payment of three hundred fifty dollars was not an accord and satisfaction for the death claim. In this connection it will be recalled that at the death of the assured he had a sick benefit claim pending for three hundred fifty dollars, that was paid, as shown by the letter of the company under date of October 16, 1923. That issue was squarely submitted by the pleadings, and determined adversely to the appellant. It is insisted that in the check, paying the disability claim, it is stated that it is in satisfaction of all claims, but there is nothing therein to indicate that it is in satisfaction of the death claim, and even if it were, it would not be, because it would be utterly without consideration to support it. The appellant owed the assured three hundred fifty dollars before his death, and the payment of that sum satisfied that claim, and did not satisfy the claim for his death.

If the payment of three hundred fifty dollars by check, operated as a release, it only operated as a release of claims arising anterior to his death. Nothing is mentioned about his death, and, of course, it couldn't be extended by implication. *Bedingfield et al.* v. *N. O. and N. E. R. R. Co.*, 110 Miss. 311, 70 So. 402; *Texas Pacific R. R. Co.* v. *Dashiell*, 198 N. S. 521, 49 L. Ed. 1150.

The case ought to be affirmed.

*Stevens & Heidelberg*, in reply for appellant.

As to the effect of motions by both sides for a directed verdict. Defendant made this motion: "Comes the

defendant at the conclusion of all of the testimony both for the plaintiff and the defendant and moves the court to exclude all the evidence and direct a verdict for the defendant.'' Immediately after this motion in the record, it will be seen that the motion was overruled and exception made to the ruling of the court. Immediately thereafter appears this motion for the plaintiff: Comes the plaintiff and moves the court to grant a peremptory instruction to the jury to find for the plaintiff for the reason that the death by gunshot would have been conclusively established; that there is no dispute about it and there is no evidence to go to the jury on any theory of suicide or any other theory of the evidence with reference to deliberate self destruction.'' This motion was sustained by the court to which action the defendant excepted.

It will be seen that a formal written instruction to find for the defendant was not submitted with the motion to exclude plaintiff's evidence. The motion, therefore, made by the defendant is, in all essential respects, simply a motion to exclude all the testimony and upon the sustaining of which the defendant would naturally have submitted formal written instruction to be granted by the court. It will be remembered that this was the plaintiff's suit and the duty was upon her to proceed with the submission of the case for further hearing upon the overruling of the defendant's motion to exclude. The sustaining of this motion and not any agreement or waiver on the part of the defendant took the case from the jury. The court would not require a vain and useless procedure on the part of the defendant in such circumstances. *Schaffer* v. *Deemer Mfg. Co.,* 108 Miss. 257.

The sustaining of the plaintiff's motion, therefore, under the Mississippi practice, relieved the defendant of the duty to take any further action. Counsel cites no Mississippi case upon the contention that any right to submit the case to the jury which the defendant may

have enjoyed was waived simply by the making of a motion by the defendant to exclude the evidence and direct a verdict for the defendant, followed immediately by the motion of the plaintiff for a peremptory instruction.

It seems that the practice in the Federal courts and in certain other state jurisdictions, especially in the state of New York, is as set out by opposing counsel and where both parties request a peremptory instruction and do no more, they thereby assume the facts to be undisputed and in effect submit to the trial judge the case not only upon the law but upon the facts and that the decision by the judge will be treated, so far as any issue of fact is concerned, the same as would be a finding of the jury on such facts.

This, however, has never been practiced in Mississippi and counsel cites us to no case approving any such practice.

We note the holding of the Oklahoma court in the case reported in 26 L. R. A. (N. S.) 217. The Oklahoma court expressly declines to follow the practice of the Federal court and of the New York court. We, also, cite the court to the note on this subject in 1913-C Ann. Cas. 1342 which refers to cases *pro* and *con*. We submit that the cases supporting what we have referred to as the Mississippi practice are supported by the better reasoning and are more in consonance with the policy of the law in this state to abolish as much as possible technicalities of practice and procedure which serve no useful purpose and submit all cases to a determination by the jury, except where a jury is expressly waived and except where the evidence one way or the other is so strong as that the court will say that every reasonable hypothesis to the contrary is excluded and that a verdict will be allowed to stand only for the party in whose favor the overwhelming preponderance rests.

HOLDEN, J., delivered the opinion of the court.

This is an appeal from a judgment for five thousand dollars against the appellant, Massachusetts Protective Association, in favor of Mrs. Sallie L. Cranford, on an accident and health policy of insurance issued by appellant and payable to the appellee in the event of the accidental death of Daniel W. Cranford, her husband (death by suicide excluded). The policy provided for an indemnity of fifty dollars per week for disability on account of injury or disease.

The declaration charged that the appellant insurance company was indebted to appellee in the sum of five thousand dollars upon the insurance policy, on account of the death of the insured, Daniel W. Cranford, who was alleged to have been accidentally killed, and that death did not result from self-destruction while sane or insane; and "that due and timely notice was given to the said defendant, corporation, of the death of the said Daniel W. Cranford;" and that the appellant insurance company failed and refused to pay the amount due under the policy. After all of the evidence in the case was introduced on both sides, the lower court granted a peremptory instruction to find for the plaintiff.

The appellant, Massachusetts Protective Association, defended the suit upon several grounds, and at the conclusion of the plaintiff's testimony it moved the court to exclude the testimony from the jury and direct a verdict for the defendant, which was refused by the court; and then, after the defendant had introduced its testimony, it requested a peremptory instruction upon the whole case, and this request was refused.

The grounds urged for reversal are:

First, that the lower court erred in granting a peremptory instruction to find for the appellee, because the proof in the case was sufficient to show the deceased committed suicide, and that the proof is conclusive of this fact, and that, since the insurance policy did not

cover death by suicide, the court should have granted the peremptory instructions asked by the appellant, but that, if mistaken in this view as to the appellant being entitled to a peremptory instruction, then it was error for the court to refuse to let the jury pass upon the question of fact as to whether the death was due to accident or self-destruction.

And, second, it is contended the declaration did not charge that due notice and proof of loss under the terms of the policy were made, nor allege a good reason for this failure.

And, third, the appellant contends it was released from any liability under the accident policy because it paid the sum of three hundred fifty dollars to the appellee, and for which she released all further claims under the policy, and that the release being in writing, parol testimony was inadmissible to contradict it or explain it, and therefore there was no liability for the death of the insured.

And, fourth, the appellant contends the lower court erred in refusing to permit it to introduce a certificate of the record of the death of Daniel W. Cranford, which the law provides may be issued by the state board of health bureau of vital statistics. Hemingway's Code, section 4872, and that such certificate shall be *prima-facie* evidence in all courts of the facts therein stated. This certificate purported to state that "the cause of the death was 'suicidal.'" The certificate was offered by the appellant for the purpose of establishing the fact that the deceased committed suicide, and therefore his death was not accidental.

On the first point presented by the appellant, we have carefully examined the evidence in the record which tended to show that Mr. Cranford committed suicide, and without detailing all of the evidence tending to prove that disputed fact, we deem it enough to say that we think the facts and circumstances in evidence were sufficient to show the death was suicidal. However, the

evidence does not reach the decree of conclusiveness that the deceased committed suicide, because there are facts and circumstances in the case, together with the legal presumption against suicide, that raises a conflict which should have been submitted to the jury to determine from all the proof in the case whether the death was accidental or suicidal. Therefore the court erred in granting the peremptory instruction for the appellee.

On the second proposition presented by appellant, the declaration charged that due notice had been given of the death, and we find from the proof in the case that notice of the death, within the time prescribed by the policy, was given to the appellant through its agent, one Mr. Williams, who was the local agent to collect the dues quarterly on the insurance policy, and who collected and paid over to the appellee three hundred fifty dollars as indemnity for seven weeks of disability on account of the sickness of the deceased immediately preceding his death.

This agent communicated the fact of the death to the appellant when he reported and filed with it the written claim for the sick indemnity, and it is unquestionably true that the appellant received notice of the death through this agent. It is unnecessary to decide whether or not Mr. Williams was a general agent authorized to receive notice, because in any event he did serve the appellant with notice when he made the proof of the sick-ness and made payment of the indemnity under and in connection with the policy involved in this case. It seems to be undisputed that the appellant received timely and ample notice from this source.

Furthermore, the appellee herself duly notified the appellant by mail that her husband had died and would make the proof of loss in the manner prescribed by the terms of the policy, but no blanks were furnished her, as provided in the policy, nor any attention paid to the notice she mailed to appellant of her husband's death.

It is shown in the record that the agent Williams had informed the appellant that the deceased committed suicide, and, of course, in view of this information the appellant took no steps to furnish blanks upon which to make proof of loss nor to investigate the death, because there would be no liability for the death by self-destruction. And so matters drifted along for some months, until the attorneys in the case notified appellant that they had the policy for collection and offered to make any proof of loss or give any information that the appellant might require. The correspondence between the attorneys and the appellant in this regard resulted in nothing, and this suit to recover the five thousand dollars under the policy for the accidental death of Mr. Cranford followed.

We think there is no merit in the point that no notice was pleaded or given or proof of loss furnished, because the whole record reflects the fact that the appellant knew of the death of deceased a few days after its occurrence, and the terms of the policy with reference to notice and proof of loss were substantially complied with so far as the appellee was able to comply.

We regard it as unnecessary to discuss the question of the invalidity of those provisions of the policy which prescribe limitations as to notice or in which suit may be brought, nor to discuss the cases of *Stuyvesant* v. *Smith* (Miss.), 99 So. 575, or *Fraternal Aid Union* v. *Whitehead,* 125 Miss. 153, 87 So. 453, which latter case deals with the question of agency, and possibly applicable to the agent Williams in this case, for the reason that the proof in the case before us shows the requirements of the policy were reasonably complied with so far as appellee was able, and when the appellant failed to furnish the blanks after notice was given, then the terms of the policy had been complied with, and the appellant was warranted in assuming that liability was denied.

On the third ground, that the appellant was released from any further liability under the policy after it had

paid appellee the three hundred fifty dollars and secured a written release, we think there is no merit in this contention, because the undisputed proof in the case shows the release signed by appellee for the three hundred fifty dollars was intended by all parties to cover only the indemnity of fifty dollars a week for seven weeks of sickness of the deceased immediately before his death. The draft for three hundred fifty dollars signed and cashed by the appellee has this written on it, ''The indorsement hereon to be in full settlement of all claims of any further liability resulting from under said policy.'' And it is contended parol testimony was erroneously permitted to show or explain that this written release was given to cover only the sick indemnity, that parol testimony is not admissible for this purpose, and that the receipt is a release in full from all further liability under the policy. ''Receipts may be explained by parol testimony, although they recite that they were given in full settlement between the parties.'' *Dewees* v. *Bostick Lbr. Co.,* 96 Miss. 253, 50 So. 865; 22 C. J. 1140.

Coming now, lastly, to appellant's contention that the lower court ought to have permitted it to introduce the certificate of the bureau of vital statistics under section 4872, Hemingway's Code, as an aid in establishing the fact that the insured committed suicide, as the certificate itself stated the death was ''suicidal,'' we do not think the statute was intended to authorize certificates to be introduced as *prima-facie* evidence except as to the prime physical cause of death; and we do not now decide whether such certificates are ever admissible in such cases, because it is unnecessary to pass on it. This certificate attempts to state the cause of the cause of death, that is, it attempts to state how, why, and by whom the wound was inflicted that caused the death. Its authorized purpose under the act was no more than to state the cause of the death, viz., by a gunshot wound, as in this case, and not whether the wound was inflicted

by any certain person, by assassination, by accident, or by intentional self-destruction. This certificate undertakes to do more than the law authorizes, its statement of fact goes beyond the purview of the law authorizing it, and was properly excluded by the lower court.

The record in the case discloses numerous facts and circumstances surrounding the death of the deceased, which point strongly to the fact that the deceased committed suicide; but, on the other hand, the evidence may reasonably sustain the theory that the death was accidental. No eyewitness saw it, and the legal presumption against self-destruction being in favor of the appellee, the burden was upon the appellant to overcome it and establish the suicide, while the burden was upon the appellee to prove accident upon the whole case; and in view of the clear conflict in the proof, we think the question of fact should be submitted to a jury.

In view of these conclusions, the judgment of the lower court is reversed, and the case remanded for a new trial.

*Reversed and remanded.*