# Brotherhood of Railroad Trainmen *v.* Walker.

(Division B.   Apr. 24, 1933.)

[147 So. 655. No. 30598.]

W. W. Ramsey, Thames & Thames, and Brunini & Hirsch, all of Vicksburg, for appellant.

Lotterhos & Travis, of Jackson, for appellee.

702

**Ethridge, P. J.**, delivered the opinion of the court.

Suit was filed by Mrs. J. M. Walker, appellee, against the Brotherhood of Railroad Trainmen, appellant, to recover a pension of thirty-five dollars per month alleged to be due to her as the widow of her husband, J. M. Walker, under a pension certificate held by him in said brotherhood. The case was submitted to a jury largely on conflicting evidence, and the jury returned a verdict for the appellee, Mrs. J. M. Walker, plaintiff in the court below, and, if the evidence made by the plaintiff in the case is sufficient to sustain the jury's verdict, it must be affirmed, unless there are errors in the admission of evidence and the giving of instructions.

The brotherhood issues to its members a beneficiary certificate, or insurance policy, with certain provisions for total disability, and such member must be a policyholder in order to secure a pension certificate, but the pension department and the beneficiary department are entirely separate departments, and the holders of policies must look to the particular department funds for payment of their claims.

In 1923 the deceased, J. M. Walker, had taken out a pension certificate in the brotherhood for which he paid the monthly premium of one dollar and fifty cents, and which he continued to pay up to the date of his death. After he died, the beneficiary certificate, not connected

with the pension certificate, was paid. The provisions for the pension department are contained in section 85, and its subsections, of the constitution and general rules of the brotherhood. Under subsection 1 of section 85 it is provided that:

"A department to be known as the Pension Department of the Brotherhood of Railroad Trainmen shall be maintained by the Grand Lodge. This department shall be self sustaining, shall be entirely separate from all others and shall, in no way, create a financial liability for any other department."

The object of the department is stated in subsection 2 as follows: "This department shall be to provide a monthly income for its members who, on account of advanced age, or any physical or mental infirmities, become totally and permanently disabled as hereinafter provided."

In subsection 7-a it is provided that: "Members of this department shall be confined exclusively to the members of the Brotherhood of Railroad Trainmen, who are in good standing at the time of making application, or who are eligible as provided for in laws governing this department. The Pension Board shall be the judge as to whether or not an application for membership in this department shall be rejected because of the rejection of said applicant's application for beneficiary certificate."

It is further provided that membership in this department shall be continued only during the time the member keeps himself in good standing in the brotherhood.

Under the total disability clause, subsection 15-a, it is stated that: "A member of this department who has been a member for two years, but who, from physical or mental causes, is totally and permanently disqualified or who has been retired by the Pension Board on account of old age, shall receive from the funds of this department a monthly pension as hereinafter provided.

In the event of the death of a member who is on the pension roll, the monthly pension will be extended to his widow, so long as she remains unmarried, and if no widow to dependent mother, provided the dues of the deceased are paid.''

In subsection 17 it is provided that: ''No member of this department shall receive a pension unless he had been disabled for a period of one year, except when the nature of his disability is such that no question or doubt as to its permanency can exist, in which case the applicant upon favorable consideration of his claim by the Pension Board shall be placed upon the pension roll as hereinafter provided. In no case, however, will a pension be allowed until a member has paid assessments for a period of two years as outlined in section 16.''

Subsection 18 provides that an ''application for pension must be made by the member claiming the pension, his guardian or legal representative (if unable to make it himself) said application to be made on a form prepared and furnished by the officers of this department. No member is to receive a pension, and his name will not be placed on the pension roll until application has been approved by the Pension Board.''

The scheme by which the pension applications were furnished to parties desiring them was for the party to apply to the secretary-treasurer of the local lodge of Brotherhood of Railroad Trainmen, who transmitted the request for a pension application to the national secretary-treasurer, who would furnish a printed application to the secretary-treasurer of the local lodge, not sending it direct to the applicant for the pension, and said secretary-treasurer of the local lodge would see that the application was filled out, and, after that was done, would transmit it to the national secretary and treasurer to be passed upon by the Grand Lodge.

While J. M. Walker, deceased, held the pension certificate, and while all his dues were paid and were con-

tinued to be paid until his death, he became ill and totally disabled, and was waited upon by a physician. What passed between J. M. Walker and his physician was objected to and was excluded, but it is apparent that Walker became aware of the necessity of having himself placed upon the pension roll of the pension department. The plaintiff's evidence showed that on June 11th a letter was written by J. M. Walker, or by his wife, to the secretary-treasurer of the local lodge to which he belonged, situated in Hattiesburg, although he lived in Jackson, requesting an application form for a pension.

Of course, there is conflict upon much of the evidence, which we will now discuss.

The local secretary denied much of what was said, but, as the jury found for the plaintiff, we will have to consider the case as made by the evidence for the plaintiff, and determine the legal questions involved in the light thereof.

Other letters were written, according to this evidence, between that date and July 1st, and there were also certain oral messages sent to the secretary-treasurer of the local lodge at Hattiesburg by other members of the brotherhood; but there was no answer to all these communications up to July 1st, when Mrs. Walker put in a long-distance call for said secretary-treasurer at Hattiesburg, but did not get in touch with him until July 2nd. She testified that she had a conversation with him and told him that they had written to him a number of times, and had some messages sent to him, and had not heard a word from him, and that she requested him, at once, to send the pension papers and also a receipt for the dues for the current month, and that he promised to do so immediately. On the same day, the secretary-treasurer wrote a short note to J. M. Walker as follows: "Dear Jim: Sorry that I did not mail this out sooner, but just waiting on your pension application. You need not worry about your dues as I will take care of these

should you forget them, and if I can be of any help to you, let me hear from you. With best wishes, I am, Fraternally, W. Singley.'' The papers which came with this note were not proper application forms, but was a benevolence form of the order under a provision of the beneficiary certificate which the constitution of the brotherhood sometimes furnished, but not as a legal right, to its members.

Mr. and Mrs. Walker procured certificates of total disability from three physicians of Jackson, one of whom died before the filing of suit, and one of whom removed from the city of Jackson, but the third testified as a witness in the case.

Singley, the secretary-treasurer, subsequently came to Jackson and visited J. M. Walker prior to his death, at which time Mrs. Walker asked him about this application. This conversation is important, and we will quote from Mrs. Walker's testimony as follows:

''Mr. Singley, the treasurer. He says, 'It is all right —Jim will have his pension.' I says, 'I want to show you that application—I have never seen a pension form, but is it a pension form—we want to do this thing right.' The application was back in the bed room and we were at the dining table, and he says, 'You will find a line in that application where it says, ''Are you a member of the pension department of the Brotherhood of Railroad Trainmen,'' and he said to answer yes to that because he didn't know whether Jim would know what to put, and he says, 'That applies for Jim's pension.' I says, 'It reads kind of funny to me,' and I never had seen one, and Mr. Walker had not, and I just wanted to be sure, and he specially pointed it out when we went back in the room. My son was in the room with me, and I got the application and showed it to him and he pointed to that line, 'Are you a member of the Pension Department of the Brotherhood of Railroad Trainmen' and he said, 'He answered yes.' ''

One member of the brotherhood who visited Walker testified that he carried messages from Mrs. Walker to Singley, but he did not remember what these messages were, but that they had reference to a claim against the brotherhood.

Another member of the brotherhood testified to a conversation with Singley, the secretary-treasurer, about the matter, and that Singley stated that it would not be wise to put in an application for a pension, as Walker was a very sick man, and he did not think he would be entitled to the pension.

Singley, this witness stated, seemed to be under the impression that a member would have to be ill a year before he could get a pension.

Singley testified for the defendants and his testimony showed that he entertained this belief, although he denied the testimony of plaintiff's witnesses in that regard.

Mrs. Walker's son, James, testified in support of what she testified as to what happened when Singley was at their home.

The evidence shows that Singley never, in fact, applied to the Grand Lodge pension department, or any other department, for aid for Walker, his reason being that the local lodge at Hattiesburg only met every two weeks, which was on the second and fourth Sundays of each month.

There was no dispute in the testimony as to Walker's condition, that he was totally and permanently disabled. In fact, the evidence shows that he was in an advanced case of Bright's disease at the time, and that he had a stroke, or something of that kind, resulting from the disease, being confined to his bed. There is no question of Walker's right to have been placed on the pension roll at the time Mrs. Walker wrote the first letter on June 10th. Had Singley, the secretary-treasurer, requested the pension department for a pension application for him,

and transmitted it to him, and presented the matter to the local lodge for action, as he should have done, then Walker would have been placed upon the pension roll. The secretary-treasurer of the Gand Lodge testified that, if the application had been received prior to Walker's death, he would have been placed upon the pension roll.

Under the method of doing business, the brotherhood did not require its members to apply to the pension department in person, but required that applications be sent through the local secretary-treasurers, and each secretary-treasurer must apply for an application for such pension, and must transmit the application when filled out and approved to the proper department of the Grand Lodge. Singley was therefore the agent of the Grand Lodge in the handling of pension applications. While he did not pass upon the sufficiency of the applications, he was the man who must apply for written applications and he must return such applications, with the local lodge's action thereon, to the pension department of the Grand Lodge.

Singley testified that an application to him for a pension application must be in writing. He was unable, however, to point out any section of the constitution and rules of the Grand Lodge which made any such requirement. The application to the pension department itself must be on forms furnished by officers of the pension department. This, of course, contemplates a writing; but it is not necessary, under the constitution and rules of the order, for an application from a pension certificate holder to the local lodge secretary-treasurer to be in writing. But, even if such a rule was in force, it could be waived, and on the facts shown on behalf of the plaintiffs, which were accepted by the jury, would be waived in this case.

The rules and regulations of the Grand Lodge, of course, must be construed so as to require a bona fide fair dealing on its part. The provisions in subsection

18, "No member is to receive a pension, and, his name will be placed on the pension roll until application has been approved by the Pension Board," merely mean that the holder of a pension certificate must take such steps, and must not be in default in regard thereto. He must furnish to the proper officer of the Grand Lodge, or the proper agent, a request for a pension application, and then must have that filled out and presented to the local secretary-treasurer for transmission to the Grand Lodge. The Grand Lodge and its agents cannot deprive a pension certificate holder of his rights by willful or negligent refusal to take the proper action. There must be, on its part, a performance of its functions in due course, and in good faith. No reasonable construction can be given to the terms of this constitution, and to the rules of the order which would enable it, or any of its agents, to refrain from taking the necessary steps or perform any act which would perfect the rights of a holder of a pension certificate. To give a construction that a member could not recover a pension when entitled to it, because the proper officer of the Grand Lodge, or the officers of the pension department thereof, had arbitrarily refused to recognize his rights, would be intolerable, and would be an unreasonable construction to place upon this provision.

Of course, it was the intention of the brotherhood to deal in good faith, if the matter was one which had received prompt attention. Here the fault lay entirely with the local secretary-treasurer of the Hattiesburg lodge, if plaintiff's evidence prevails, as it must on this record. But such local secretary-treasurer was the agent of the brotherhood, and his act in this regard was the act of the brotherhood and its pension department.

It is true that the constitution and rules provide that, if a widow is to be entitled to the pension, her husband must have been on the pension roll, but this, of course, means that, if he was entitled to be on the roll, and had

been left off by the arbitrary act of the pension department or its agents and officers, her rights would not be defeated where neither her husband nor she was at fault.

This court, in a number of cases, has held that, if an insured is prevented from making his application or furnishing the required forms by the negligence or willfullness of the insurer, or its agents, then no defense can be built upon the failure to furnish such forms, and the insured is entitled to recover under his contract where he has done all he could to meet the requirements, and his failure is due to negligence of the insurance company. Atlantic Horse Ins. Co. v. Nero, 108 Miss. 321, 66 So. 780, 781; Massachusetts Protective Ass'n v. Cranford, 137 Miss. 876, 102 So. 171; Newark Fire Insurance Company v. McMullen, 142 Miss. 369, 107 So. 523, 524. In Atlantic Horse Ins. Co. v. Nero, supra, the court said: "The policy itself provides that proofs of loss should be made 'upon and in compliance with forms issued by' the defendant. This provision of the policy could not be complied with unless the defendant furnished to the plaintiff a 'blank' or 'form' upon which to make the necessary proof and by which he would also be advised of the character of proof desired; and no such blank or form was furnished to him. The defendant was notified of the death of this horse, and if it desired further proof thereof, additional to that called for in its telegram, it should have complied with the terms of its policy by furnishing to the plaintiff a bank or form upon which to make it."

In Massachusetts Protective Ass'n v. Cranford, 137 Miss. 876, 102 So. 171, 173, the court said that: "On the second proposition presented by appellant, the declaration charged that due notice had been given of the death, and we find from the proof in the case that notice of the death, within the time prescribed by the policy, was given to the appellant through its agent, one Mr. Williams, who was the local agent to collect the dues quar-

terly on the insurance policy, and who collected and paid over to the appellee three hundred fifty dollars as indemnity for seven weeks of disability on account of the sickness of the deceased immediately preceding his death. This agent communicated the fact of the death to the appellant when he reported and filed with it the written claim for the sick indemnity, and it is unquestionably true that the appellant received notice of the death through this agent. It is unnecessary to decide whether or not Mr. Williams was a general agent authorized to receive notice, because in any event he did serve the appellant with notice when he made the proof of the sickness and made payment of the indemnity under and in connection with the policy involved in this case. It seems to be undisputed that the appellant received timely and ample notice from this source. . . . It is shown in the record that the agent Williams had informed the appellant that the deceased committed suicide, and of course, in view of this information, the appellant took no steps to furnish blanks upon which to make proof of loss nor to investigate the death, because there would be no liability for the death by self-destruction. And so matters drifted along for some months, until the attorneys in the case notified appellant that they had the policy for collection and offered to make any proof of loss or give any information that the appellant might require. The correspondence between the attorneys and the appellant in this regard resulted in nothing, and this suit to recover the five thousand dollars under the policy for the accidental death of Mr. Cranford followed. We think there is no merit in the point that no notice was pleaded or given or proof of loss furnished, because the whole record reflects the fact that the appellant knew of the death of deceased a few days after its occurrence, and the terms of the policy with reference to notice and proof of loss were substantially complied with, so far as the appellee was able to comply." See, also, Fraternal Aid

Union v. Whitehead, 125 Miss. 153, 87 So. 453, which we think is in point on the proposition that the local secretary-treasurer was the agent of the Grand Lodge and the pension department thereof in dealing with the matter.

In the case of Newark Fire Ins. Co. v. McMullen, supra, in reference to notice, etc., the court said: "Where the insurance company receives an informal notice of the loss, one not provided for by the policy, and by reason of such notice sends out an agent to adjust the loss, and also through its authorized agent informs the insured of the coming of the adjusting agent, and that still another agent, the local soliciting agent of the company, will furnish the necessary blanks on which to make proof of the loss, there is a waiver of the requirement of the policy that immediate notice of loss, in writing, shall be given the company, and the company is thereby estopped to set up that as a defense." See, also, Home Ins. Co. v. Gibson, 72 Miss. 58, 17 So. 13; London G. & A. Co. v. Miss. Cent. R. Co., 97 Miss. 165, 52 So. 787; Commercial Union Fire Ins. Co. v. Kelly, 144 Miss. 833, 110 So. 681.

We could quote many cases from other jurisdictions, but we think, upon the authorities referred to from this state, it would be useless to go into other jurisdictions, and that the evidence for the plaintiff is sufficient to sustain the judgment of the court below.

Of course, there is dispute as to the evidence, but, had the jury decided otherwise, we would be bound by their verdict, as they are the triers of the case on the facts. When the jury has found on the facts on disputed evidence, it remains only for us to determine whether the evidence before the jury was sufficient to sustain their act, and, in this case, we think it was.

The defendant requested a peremptory instruction, which was refused, and we think rightfully.

Two instructions for the plaintiff were complained of as follows:

"The court instructs the jury for the plaintiff that if you believe from a preponderance of the evidence that J. M. Walker was totally and permanently disabled under such conditions that there could be no question of doubt thereof, and if your further believe that J. M. Walker himself or his authorized agent requested W. Singley as secretary-treasurer of the Hattiesburg local lodge of the Brotherhood to furnish forms for making application for a pension in accordance with the rules of the Brotherhood, and if you further believe that said Singley failed to furnish such forms, but furnished a different form, stating that the same was the proper form to be used, and that said Walker thereupon executed said form and delivered it to Singley as secretary-treasurer, and if you believe that said Singley by his conduct, after having been requested to furnish proper forms, negligently or willfully, misled said Walker and prevented him from executing and filing proper forms, and if you believe that said Singley was therein acting as authorized agent of the defendant then it will be your sworn duty to bring in a verdict for the plaintiff."

"The court instructs the jury for the plaintiff that if you believe from the evidence that J. M. Walker was totally and permanently disabled, while a member in good standing of the pension department of the defendant, under such conditions that there could be no doubt thereof, and if you further believe said Walker was prevented from getting his name on the Pension Rolls of the defendant prior to his death by reason of the wilful or negligent conduct of W. Singley, as secretary-treasurer of the Hattiesburg local lodge, and if you believe that said Singley was acting therein as authorized agent of the defendant, then the plaintiff, as widow of said Walker' is entitled to a verdict in this case, and it will be your duty to find a verdict for the plaintiff."

We find no error that would warrant us in reversing the case.

Affirmed.