LAVENDER *et al. v.* VOLUNTEER STATE LIFE INS. CO.

(Division B. Oct. 22, 1934. Suggestion of Error Overruled Dec. 3, 1934.)

[157 So. 101. No. 31374.]

170

G. E. Williams, of Clarksdale, for appellant.

Miller, Miller & Martin, of Chattanooga, Tennessee, Brewer & Montgomery, of Clarksdale, and **Charles A. Sisson**, of Winona, for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

On January 19, 1919, Weldon K. Lavender took a policy of insurance with the Volunteer State Life Insurance Company, whereby said insurance company, in consideration of the payment of the premium therein mentioned, agreed to pay to the beneficiary named therein, upon the death of said assured, the sum of five thousan dollars. The insurance policy had attached to it a rider providing as follows:

·"Attached to and forming a part·of Policy No. 39,096. In lieu of the Incontestability provisions printed in this Policy and·marked Void, the following conditions will apply; This policy shall be incontestable after one year from its date, except for nonpayment of premium; or

engaging in Aeronautics; or engaging in Military or Naval Service, or engaging in Red Cross, Y. M. C. A. or any other War Relief Service, in time of War, outside the Continental United States and Dominion of Canada, including the waters within three miles of the Coast Line, but not including the Panama Canal Zone, without first having obtained written permission from the Company, and having paid such extra premium as may be required by the Company. In the event of death of the insured while so engaged or as a direct or indirect result of having been so engaged, without his having obtained such permission, and having paid extra premium as may be required by the Company, the liability of the Company hereunder shall be limited to a sum equal to twice the regular premiums, i. e., exclusive of any extra premiums, received on the policy; provided, however, that in no case shall the amount payable exceed the face amount of the policy.''

On June 24, 1920, Weldon K. Lavender and the insurance company entered into what is known as a double indemnity for accidental death contract, which was attached to and made a part of the original contract, the material portions of which are as follows:

"The Volunteer State Life Insurance Company of Chattanooga, Tennessee, will pay to the beneficiary designated in the policy proper, bearing the number stated above (No. 39,096) upon the conditions and subject to the limitations below, instead of the amount insured, Double that Amount, of Ten Thousand Dollars, at its Home Office in Chattanooga, Tennessee, on receipt of due proof (1) that the insured died in consequence of bodily injury effected solely and independently of all other causes through external, violent and purely accidental means, of which (except in case of drowning) there is visible contusion or wound on the exterior of the body, (2) that such death occurred ninety days after such ac-

cidental injuries were sustained, (3) that the policy proper was in force under its original conditions at the time of death, (4) that this Rider was in full force and all premiums thereon had been duly paid according to its terms, (5) and that death did not result directly or indirectly from any of the causes or under any of the circumstances enumerated in the paragraph below.

"This agreement to pay double the amount Insured in event of death as above recited, does not cover homicide, self-destruction, while sane or insane; death resulting directly or indirectly from any character of injury sustained while intoxicated; while participating in aeronautics, sub-marine, or other underwater operations, mining or other underground operations, death caused directly or indirectly, wholly or partially by, or related to war, riot, strike or insurrection, or other act incident thereto, either in the air, or on land or water; death resulting from any violation of the law or from military or naval service of any kind, or from police duty in any military, naval or police organization; or death resulting from enforcing, or assisting to enforce law; or death resulting directly or indirectly from bodily or mental infirmity, ptomaines, or bacterial infections other than infection occurring simultaneously with and in consequence of an accidental cut or wound."

On August 7, 1932, said Weldon K. Lavender died and thereafter the insurance company paid the beneficiary five thousand dollars under the policy, but denied liability under the double liability rider. Said five thousand dollars was paid and received without prejudice to any right, claims, or defenses that the parties to this cause might have in connection with the double indemnity rider.

The case was tried upon an agreed statement of facts, the material parts of which read as follows:

"That on the morning of August 4, 1934, the insured,

Weldon K. Lavender, in company with J. J. Myers, Jr., went to the Courthouse of Coahoma county, Mississippi, at Clarksdale, for the purpose of getting permission to see one of his tenants whom Frank Hamilton, a constable of Coahoma county, had prior to that date arrested and taken into custody for some law violation. The negro was a tenant on the plantation operated by the said Lavender. Upon arriving at the courthouse, said Hamilton was found at the east entrance thereof, when and where the said Lavender accosted the said constable for coming on his place and arresting his negro tenant without notice to him, and also for putting the negro in jail and refusing Lavender permission to see the negro; that an argument ensued in which the said Hamilton told the said Lavender that he considered a person who took up for a bootlegger no better than a bootlegger. The said Lavender left the courthouse but came back on the afternoon of the 4th and again met the said Hamilton at the east entrance of the courthouse and thereupon the said Lavender cursed and abused said Hamilton, telling him if he would pull off his gun and constable star he would whip him, saying; 'I never had any use for you, you are a God damn son of a bitch.' Whereupon the said Hamilton handed his star and pistol to the said Myers, and just as he did so the said Lavender advanced upon him and without provocation or cause assaulted the said Hamilton and struck the said Hamilton a severe blow in the face, knocking the said Hamilton against a brick pillar of the east entrance of the courthouse and severely bruising his head; that a fight and scuffle ensued and during the scuffle several blows were passed back and forth, and the two clinched at least once and violently tussled, as a result of which the said Lavender received a blow on the side, or strain in the side from some external force, which caused a rupture of his spleen; no weapons were used and there was no intention on the part of the said Hamilton to fatally wound or kill the said Lavender.

The participants were separated by outsiders and the said Lavender went to his home. A careful examination of the body of the said Lavender disclosed no evidence of the injury sustained in the scuffle, such as wounds or contusions on the exterior of the body, except that immediately upon reaching home and within a few minutes after the tussle the said Lavender became nervous and began to turn pale; that within two hours thereafter he turned deathly pale and became very sick; that his facial expression reflected that he was suffering from intense pain and his body was drawn from pain; that he lay down and soon became unable to arise; that two physicians were immediately called and after attempting for several hours without effect to ease the pain, decided to perform an operation to locate the trouble, and after making an incision found his abdomen filled with blood from a ruptured spleen, the same being torn almost in two; that the spleen was in such a ruptured condition it had to be removed, and almost bled to death internally from the wound, a blood transfusion was performed in a futile effort to save his life; that within four days after the injury the said Lavender died; that the spleen of the said Lavender, prior to the difficulty, was in a weakened condition due to malaria, which fact was known to said Lavender and because of which it would have been more easily ruptured than a normal spleen."

The insurance company filed a plea of general issue, serving notice thereunder that it would show that the said Weldon K. Lavender did not come to his death as a consequence of bodily injuries effected solely and independently of all other causes through external, violent, and purely accidental means of which there was a visible contusion or wound on the exterior of the body, and that his death was caused by his violating the law.

The plaintiffs gave notice under the general issue in

denial and avoidance of the special matter set up by the insurance company in its notice under its plea of general issue, stating that they would introduce the incontestable clause for the purpose of denying and avoiding the provisions contained in the insurance policy, and that, by reason thereof, the insurance company was not entitled to defeat the action by anything or things set forth under the general issue.

The first question which we will consider is whether or not the incontestable provision of the policy precludes the defendant from showing nonliability by reason of the death of the insured under the circumstances stated in the agreed statement of facts, from which it will be seen that Weldon K. Lavender, unprovoked, brought on the difficulty, striking the said Hamilton first, from which the fight or scuffle ensued, during which several blows were passed back and forth. This illegal assault upon the said Hamilton was clearly violation of the laws of the state of Mississippi, and it is clear that Lavender's death was a result of the fight thus provoked and deliberately entered into by him.

We do not think the incontestable provisions of the policy apply to the double liability provision, because it is expressly stated in the double liability provision that "this agreement to pay double the amount insured in event of death as above recited, does not cover homicide, self-destruction, while sane or insane; death resulting directly or indirectly from any character of injury sustained while intoxicated . . . death resulting from any violation of the law," etc. In other words, the double indemnity clause did not insure against a death resulting from said causes.

There is conflict in the authorities as to whether a clause of this kind would preclude a recovery where the assault was made with the hands or feet, without a deadly weapon where the injury would not be reasonably an-

ticipated. This court does not seem to have passed directly on this proposition, but the federal district court passed upon a clause of this kind in the case of Sanders v. Jefferson Standard Life Ins. Co., and held that the provision for double indemnity for accidental death did not prevent the insurer from showing that it had not assumed the risk of the acts named in the rider, in 4 F. (2d) 555, which holding was affirmed in (C. C. A.) 10 F. (2d) 143, 144, the court there saying that: "A provision for incontestability does not have the effect of converting a promise to pay on the happening of a stated contingency into a promise to pay whether such contingency does or does not happen. It cannot properly be said that a party to an instrument contests it by raising the question whether under its terms a liability asserted by another party has or has not accrued."

The reasoning of this case and the line of authorities holding to the same effect, we think, announce the correct rule. Parties to a contract have the right to assume or not assume certain risks, and we must enforce contracts as they are written, unless they are contrary to the law of the state or to some public policy. Berry v. Lamar Life Ins. Co., 165 Miss. 405, 142 So. 445, 145 So. 887. It is desirable that, if it can be reasonably done, consistency in decisions between the state and federal courts should be maintained, where the right of action is governed by the state law. We would not follow a federal decision manifestly contrary to our conception of law, but we will consider, with great deference, a decision of the Circuit Court of Appeals construing a law of this state, where this court has not theretofore passed upon the question. Harmony between the decisions of these two tribunals is greatly to be desired.

From the agreed statement of facts, it will be seen that there was no stipulation that there was any wound or contusion visible upon the body of Lavender, and that it

required an operation to determine what the injury was. The stipulation showed that the decedent provoked the difficulty, made the assault, and was clearly violating the law in so doing; and the policy does not cover these risks, and the death resulted from such violation of the law. Sovereign Camp, W. O. W. v. Hunt, 136 Miss. 156, 98 So. 62, 35 A. L. R. 189; American Nat. Life Ins. Co. v. Johnson, 152 Miss. 811, 118 So. 898; Osborne v. People's Benevolent Industrial Life Ins. Co., 19 La. App. 667, 139 So. 733; Travelers' Ins. Co. v. Seaver, 19 Wall. (86 U. S.) 531, 22 L. Ed. 155.

There is a distinction between accidental death, and death resulting from accidental means. We will not, however, enter upon a discussion of this question, as what we have already said leads to an affirmance of the judgment of the court below. The judgment is affirmed.

Affirmed.