NEW YORK LIFE INS. CO. v. REEDY.

(Division A. April 25, 1938, Suggestion of error overruled, May 9, 1938.)

[180 So. 607. No. 33173.]

Watkins & Eager, of Jackson, and **D. W. Houston**, of Aberdeen, for appellant.

776

Paine & Paine of Aberdeen, for appellee.

**Smith, C. J.,** delivered the opinion of the court.

The appellee filed two suits against the appellant in the court of a justice of the peace on two life insurance policies issued to him on February 5, 1920, each containing a disability clause, to recover alleged disability benefits and premiums paid on the policies by him. From a judgment there for the appellee the cases were carried by the appellant to the circuit court, where, by agreement, they were consolidated and tried as one, resulting in a verdict and judgment for the appellee.

At the close of the evidence the appellant requested, but was refused, a directed verdict in its favor. Both of the policies, in addition to insuring the life of the appellee, contain the following provisions: ''And the Company agrees to pay to the Insured one-tenth of the face of this policy per annum, during the lifetime of the Insured, if the Insured becomes wholly and permanently disabled before age 60, subject to all the terms and conditions contained in Section 1 hereof. . . . Whenever the Company receives due proof, before default in the payment of premium, that the Insured, before the anniversary of the Policy on which the Insured's age at nearest birthday is 60 years and subsequent to the delivery hereof, has become wholly disabled by bodily injury or disease so that he is and will be presumably, thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit,'' then further payment of premiums will be waived and ''the Company will pay the Insured a sum equal to one-tenth of the face of the Policy and a like sum on each anniversary thereafter during the lifetime and continued disability of the Insured. . . . This

policy is free of conditions as to residence, travel, occupation, or military or naval service, except as provided under Double Indemnity on first page hereof, and shall be incontestable after two years from its date of issue except for non-payment of premium."

In 1935 the appellee filed a claim with the appellant for the disability allowance, setting forth that he was then totally disabled, which claim the company approved, waived further payment of premiums on the policies, and began paying him the disability benefit provided therein. On June 10, 1936, the appellant wrote a letter to the appellee from which it appears, in substance, that it had just learned that the appellee's disability occurred prior to the issuance of the policies, and therefore the appellant was not liable under the disability provision thereof; demanded the repayment of $200 paid the appellee, and the payment of premiums that had been waived, in default of which the company would declare the policies lapsed for nonpayment of premiums. After some further correspondence between them, the appellee mailed a check to the appellant's Jackson, Miss., office for $109.92, inclosed in the following letter: "Gentlemen: You will find enclosed check for $109.92 for premiums on policy numbers 6 671 928- 6 671 929, which the company requested in letter June 10th. Yours truly, Millard G. Reedy." This letter was received and the check collected by the appellant's Jackson office. On July 11th the appellee wrote a letter to the appellant mailing it to its New York office, the substance of which is that he denied liability for the payment of the premiums and stated that he would immediately sue the appellant for the recovery thereof, and would pay premiums thereafter to become due "until a court of competent jurisdiction decides that I am not due to pay any more premiums on account of my physical condition, and I therefore herewith demand that you immediately refund to me these premiums which I paid to you."

Three questions are presented: (1) Does the incontestability of the policies after two years relieve the appellee from proving that his disability occurred subsequent to the delivery of the policies? Should this question be answered in the negative, then (2) should the jury have been permitted to find from the evidence that the appellee's disability occurred subsequent to the delivery of the policies? Should this question be answered in the affirmative, then (3) is the appellee entitled to a recovery, in addition to the disability benefit provided by the policies, of the premiums paid by him after his disability arose?

The incontestability provision of the policies prevents the appellant from denying the validity of the policies but does not relieve the appellee from proving that the relief sought by him is within the promise made by the appellant in the policies. Lavender v. Volunteer State Life Ins. Co., 171 Miss. 169, 157 So. 101; Messina v. New York Life Ins. Co., 173 Miss. 378, 161 So. 462; John Hancock Mutual Life Ins. Co. v. Hicks, 43 Ohio App. 242, 183 N. E. 93; Apter v. Home Life Ins. Co., 266 N. Y. 333, 194 N. E. 846, 98 A. L. R. 1281; Sanders v. Jefferson Standard Life Ins. Co., 5 Cir., 10 F. (2d) 143. Cf. United States v. Patryas, 58 S. Ct. 551, 82 L. Ed. ——.

The promise here is to pay the appellee one-tenth of the face of the policies per annum in event he should become permanently disabled "subsequent to the delivery" of the policies. Consequently, in order to recover, the burden was upon the appellee to prove that he became permanently disabled after and not before the delivery of the policies. Equitable Life Assurance Soc. v. Henderson, 177 Miss. 815, 172 So. 321.

The evidence introduced by the appellee is that after the delivery of the policies he worked in a hardware store for about two years; that in 1935, when he applied to the appellant for disability benefits under the policies, he was totally and permanently disabled, but when his disability arose does not appear. In his cross-examination,

when testifying in his own behalf, the following questions and answers appear:

"Q. As I understand this total disability originated when you were in France during the war? A. Yes.

"Q. This same kidney trouble? A. Yes.

"Q. And has continued ever since? A. Yes. . . .

"Q. You remember the date of your discharge from the Army? A. I think it was the 27th of April, 1919, 27th or 28th, somewhere along there.

"Q. Your total disability has dated at least from that date? A. Yes."

On his redirect examination the following appear:

"Q. Mr. Reedy, you were asked on cross-examination if you were totally disabled on the date of your discharge from the Army, were you or not? A. I misunderstood.

"Q. They asked you were you totally disabled, were you? A. No.

"Q. What did you mean to say in answer to that when you answered you had been totally disabled from the date of your discharge? A. I meant to say I didn't know I was a total disability at the time of discharge.

"Q. Did you have some kidney trouble at the time of your discharge? A. Yes."

It also appears from his examination that he testified in the justice of the peace court that he considered himself wholly disabled from the time of his discharge from the Army. He admitted having sued the government for benefits under a war risk insurance certificate, and alleged in his declaration that he was permanently disabled from a disease of the kidneys when discharged from the Army on April 28, 1919.

It will thus be seen that the appellee failed to prove that his disability arose after the delivery to him of the policies sued on. This being true, he cannot recover on the disability clauses of the policies.

In order for the appellee to recover the premiums on the policies paid by him after he filed his claim for disability benefits, it must appear that he was then per-

manently disabled and became so after the delivery of the policies, and as this fact does not appear it is immaterial whether he paid the premiums voluntarily or not.

The appellant's request for a directed verdict should have been granted.

Reversed, and judgment here for the appellant.