## NEW YORK LIFE INS. CO. v. WOOD.

(Division B. May 2, 1938. Suggestion of Error Overruled May 30, 1938.)

[180 So. 819. No. 33195.]

234

Loving & Loving, of Columbus, for appellant.

**Joseph S. Rice,** of Starkville, for appellee.

238

Argued orally by **Joseph S. Rice** for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellee brought this action in the circuit court of Oktibbeha county against appellant to recover the sum of $1,000 under a double indemnity provision of an insurance policy on the life of her husband, Harry D. Wood, issued by appellant in 1919, and in which appellee was named as beneficiary. The trial resulted in a verdict and judgment in appellee's favor, from which judgment appellant prosecutes this appeal.

The double indemnity provision of the policy is in this language:

"Double Indemnity—Double the Face of this Policy upon receipt of due proof that the death of the insured resulted directly and independently of another cause from bodily injury effected solely through external, violent and accidental cause, and that such death occurred within sixty days after sustaining such injury.

"This Double Indemnity Benefit will not apply if the Insured's death resulted from self-destruction, whether sane or insane; from any violation of law by the Insured; from Military or Naval Service in time of war; from a state of war or insurrection; from engaging in submarine or aeronautic operations; from physical or mental infirmity; or directly or indirectly from illness or disease

of any kind. The Company shall have the right and opportunity to examine the body, and to make an autopsy unless prohibited by law.''

The defense was that the insured committed suicide by taking an overdose of bromidia. Appellant paid into court the amount due, excluding any liability under the double indemnity provision.

The insured died in December, 1936, and the evidence showed without conflict that his death was caused by an overdose of bromidia. He was addicted to periodic sprees, and had been for some years. After these sprees he would be very nervous, and about two years before his death a doctor in Mobile had given him a prescription for medicine to relieve the nervousness. The insured had been on a beer spree for a week or more before his death. He was an employee on the staff of the Starkville News, and was in the printing office of that paper when he took the overdose of medicine. Two of his coworkers, Pugh and Fox, saw him at frequent intervals between 5 and 6:30 o'clock on the afternoon of his death. Both testified that he acted and talked as if he were drinking heavily; one of them, at the request of the insured, had the prescription for the bromidia refilled, and brought the medicine to him. After the medicine was handed to him he was seen with a glass and spoon and pouring some of the medicine into the spoon. This occurred in the back of the office where the light was bad. Between 6 and 6:30 o'clock on the same afternoon he was found lying on the floor in an unconscious condition, and nearby was a wet place on the floor with wadded paper lying on it. He was taken home by Pugh and Fox, and Dr. Eckford was called. Dr. Eckford testified that Wood's breath was strong with bromidia; that he pumped the contents of his stomach out, and it was heavily loaded with the medicine; and that he had no doubt but that his death was brought about by an overdose of that remedy. A bottle of bro-

midia from which fifteen to twenty teaspoonfuls had been removed was found in his pocket. Dr. Eckford testified that a full dose was two teaspoonfuls.

Appellant relied on those facts as sufficient to show suicide. The question is whether the death of the insured resulted directly and independently from an "external, violent and accidental cause." There is a presumption against suicide. Massachusetts Protective Association v. Cranford, 137 Miss. 876, 102 So. 171. Although the burden of proof to establish liability is upon the plaintiff throughout, such burden is aided by the presumption against suicide. Jefferson Standard Life Ins. Co. v. Jefcoats, 164 Miss. 659, 143 So. 842. The word "accidental" used in policies of this character means undesigned, unintended, unexpected, and unpremeditated. In North American Accident Ins. Co. v. Henderson, Miss., 177 So. 528, 529, the word is defined thus: "If a man jump from a four-story window to the pavement below, deliberately intending to do so, this is no accident but is suicide, and is not covered by an accident policy. But if the same person had intended to look out from the window, and, in approaching it, tripped over some object on the floor and was thereby thrown out of the window, this would be an accident, although the party was negligent in not seeing the object over which he tripped."

Death from an excessive dose of medicine prescribed by a physician taken without the intention of self-destruction is a death from "external, violent and accidental means" within the terms of such a policy. Dezell v. Fidelity & Casualty Co., 176 Mo. 253, 75 S. W. 1102. "That a physician voluntarily attempts to inhale chloroform for headache and insomnia does not prevent recovery on an accident insurance policy for his death, due to his accidentally taking an overdose of the remedy." Brown v. Continental Casualty Co., 161 La. 229, 108 So. 464, 45 A. L. R. 1521. Nor does death from tak-

ing poison by mistake prevent a recovery on such a policy. Healey v. Mutual Accident Association, 133 Ill. 556, 25 N. E. 52, 9 L. R. A. 371, 23 Am. St. Rep. 637.

Appellant relies largely on Landress v. Phoenix Ins. Co., 291 U. S. 491, 54 S. Ct. 461, 78 L. Ed. 934, 90 A. L. R. 1382. We do not think that decision is in point. The death in that case was caused by a sunstroke. The court held the means to be natural, although the result was accidental, therefore there was no liability under the policy. In the present case the means was not natural; it was accidental, external, and violent and caused death, or rather, the evidence was sufficient to go to the jury on whether or not that was true. There was no evidence of a threat of suicide, or anything else tending to show such a purpose.

Affirmed.