Byrd, et al. *v.* Reserve Life Ins. Co.

June 8, 1953

No. 38799 34 Adv. S. 13 65 So. 2d 249

762

*William S. Murphy,* for appellant.

764

*William A. Bacon,* for appellee.

**HOLMES, J.**

Prentiss M. Byrd brought this suit in the Chancery Court of George County against Reserve Life Insurance Company, seeking the recovery of monthly disability benefits under the provisions of an accident insurance policy issued to him by the company. At the conclusion of the evidence introduced on behalf of the complainant, a motion was made by the defendant to dimiss the original bill and this motion was sustained and accordingly a decree was entered dismissing the original bill with prejudice. It is from this decree that this appeal is prosecuted. During the pendency of this appeal, the said Prentiss M. Byrd died and the cause was revived in the name of his widow and two minor children.

The facts with reference to the injuries claimed to have been sustained by the said Byrd, and for which the monthly disability benefits are claimed, have heretofore been before this Court. In the case of Ingalls Ship-

building Corp. v. Byrd, 60 So. 2d 645, which involved a claim by the said Byrd for compensation for the same injuries, arising under the workmen's compensation act, and wherein an award of compensation was approved, it was held that the injuries in question were accidental injuries arising out of and in the course of the employment of the claimant.

The pertinent provisions of the policy under review on this appeal are as follows:

"Reserve Life Insurance Company, Dallas, Texas, hereinafter called company, hereby insures Prentiss M. Byrd, hereinafter called insured, subject to all of the provisions and limitations hereinafter contained, against loss of life, limb, sight or time resulting directly and independently of all other causes from accidental bodily injury sustained while this policy is in effect, said bodily injury being hereinafter referred to as such injury."

The injuries of the deceased Byrd arose as follows: He was employed by the Ingalls Shipbuilding Corporation at Pascagoula, Mississippi, as a chipper. He was required to perform his work in the inner-bottom of a ship, which was a small compartment about two feet wide, three feet long, and three and a half feet high. His work consisted of chipping off the burrs or surplus metal left in the process of welding, and in the performance of his work he used a chipping hammer, which is an instrument directed by hand and operated by about 90 pounds of air pressure. Because of the small dimensions of the compartment in which he worked, he usually got on his knees and braced his back against a strip of iron about four feet wide called a "strong back" and installed in the compartment to steady the bulkhead. This was done to protect himself from the vibration resulting from the operation of the chipping hammer. The particular compartment in which he was working at the time he sustained the injuries in question was of such small dimensions, however, that he squatted on his feet and braced his back against the strong back. While so engaged in

his work on the occasion involved, he felt a severe pain in his back. Thereafter, he began to experience numbness in his limbs, and on consultation with a doctor and after an operation to which he was subjected in a hospital in Mobile, it was discovered that he had an angiomatous malformation, being a growth or malformation of blood vessels which extended from the level of the twelfth through the ninth vertebrae. He did not know of this condition at the time he entered his employment, and in fact, he was subjected to a physical examination upon entering his employment and found to be physically fit to engage in hard labor. The doctor testified that the condition known as angiomatous malformation is considered in medical science to exist at birth or to develop very shortly after birth. The doctor further testified that it was revealed as a result of the operation and examination of the patient that these massed blood vessels were markedly swollen and that this caused a compression of the spinal cord and resulted in the paralysis of the said Byrd. Such condition, he said, was caused by trauma and was brought about by the repeated and severe vibrations of the chipping hammer, and that such trauma produced the paralysis. The doctor further testified that but for the trauma caused by the repeated vibration of the chipping hammer, Byrd may have lived indefinitely without experiencing any trouble from the angiomatous malformation. As a result of the condition thus brought about, the said Byrd was completely and wholly disabled.

The only controverted question presented on this appeal is whether the injuries sustained as aforesaid by the said Byrd were within the coverage of the aforesaid provisions of his accident insurance policy. The solution of this question lies in the distinction between the language "accidental bodily injury" and the language "bodily injury accidentally sustained or sustained through accidental means" as found in different accident insurance policies. It will be observed that the

policy under review insures against loss from *accidental bodily injury* sustained while the policy is in effect. It does not insure against loss from *bodily injury accidentally sustained or sustained through accidental means.* In the case of Lavender, et al v. Volunteer State Life Insurance Company, 171 Miss. 169, 157 So. 101, the Court said: "There is a distinction between accidental death and death resulting from accidental means." In the case of Landress v. Phoenix Insurance Company, 291 U.S. 491, 54 S.Ct. 461, 78 L.Ed. 934, 90 A.L.R. 1382, the Court said: "This distinction between accidental external means and accidental result has been generally recognized and applied where the stipulated liability is from injury resulting from an accidental external means." The death in that case was caused by a sunstroke while the victim was voluntarily engaging in a game of golf, and the Court held in that case the *means* to be natural although the *result* was accidental. It frequently happens that where an injury occurs, the means employed are voluntarily adopted but the result is unintended and unexpected and undesigned. The result, therefore, is accidental but the means may not be. With this distinction in mind, we refer to the cases of United States Fidelity and Guaranty Co. v. Wilson, 184 Miss. 823, 185 So. 802, and United States Casualty Co. of New York v. Malone, 126 Miss. 73, 87 So. 896, which are so strongly relied upon by the appellee in this case as to provoke the statement in appellee's brief that if the decree of the court below be reversed, it will be necessary to overrule these cases. It must be borne in mind, however, that in cases of this nature the parties are governed by the contract of insurance. Herein lies what we deem to be the distinction between the case at bar and the Wilson case, supra, and the Malone case, supra. The Wilson case involved a liability insurance policy. One Edward D. Jones was an employee of the Meridian Grain Elevator Company. He sued the company alleging that his employer had failed to furnish him a reasonably safe place in which to work

and that as a result thereof, he had been caused to breathe dust-laden air given off from feed products causing him to be afflicted with chronic bronchitis and finally with tuberculosis. Recovery was had in that case in the trial court, and an appeal was prosecuted to this Court, as a result of which Jones was denied recovery. Meridian Grain Elevator Company v. Jones, 176 Miss. 764, 169 So. 771. Upon the filing of said case, the Elevator Company called upon the United States Fidelity and Guaranty Company to defend the action under a liability insurance policy, the provision of the policy relied upon being as follows: "To defend in the name and on behalf of the assured, any suit brought against the assured to enforce a claim, whether groundless or not, for damages on account of bodily injuries, including death at any time, resulting therefrom, accidentally suffered or alleged to have been suffered by any employe or employes of the assured." The insurance company denied that there was coverage under the policy, and the said case of United States Fidelity and Guaranty Company v. Wilson, supra, was an action against the United States Fidelity and Guaranty Company to recover the expenses of defending the aforesaid suit of Jones.

It will be observed that the coverage provision of the policy covered a claim on account of bodily injuries accidentally suffered or alleged to have been suffered. It did not cover a claim on account of *accidental bodily injuries* sustained while the policy was in effect. In view of the facts of that case, the Court in the Wilson case, supra, said: "In some jurisdictions it would be held that the bodily injury of which Jones complained was one which was accidentally suffered. In this state, however, we are committed to the rule that when one is injured while performing an act which he intended to do,—proceeding throughout the entire course of its performance in the manner intended and without any unpremeditated deflection therefrom,—the fact that the ultimate injurious result was unexpected does not make out a case

of an injury accidentally suffered." Here the Court was dealing with bodily injuries accidentally suffered or suffered through accidental means and not with accidental bodily injuries sustained while the policy was in effect. The Court held, therefore, in that case that "the fact that the ultimate injurious result was unexpected does not make out a case of an injury accidentally suffered." In other words, the facts there before the court did not make out a case of an injury accidentally suffered or suffered through accidental means.

The same distinction is to be observed in the case of United States Casualty Company of New York v. Malone, 126 Miss. 73, 87 So. 896. In the Malone case, the policy insured "against loss resulting directly and independently of any and all other causes from bodily injury effected solely through external violent and accidental means. It was contended in that case that the proximate cause of the death of the claimant was an accident resulting in an abrasion of the skin on the toe, which became infected and thereafter caused the death of the claimant. It appeared that the claimant had voluntarily rubbed his toe with a towel causing the abrasion. The Court said: "If the injury was caused by rubbing, the rubbing was voluntarily done, and this would not constitute an injury through *accidental means.*"

Thus in both the Wilson case and the Malone case the policy contract insured against loss from bodily injury accidentally suffered or suffered through accidental means and did not insure against accidental bodily injuries sustained while the policy was in force. These cases are, therefore, not controlling or applicable here because the contract in the case at bar is wholly different. In the case at bar, the contract, in no uncertain or ambiguous language, insures against loss from *accidental bodily injuries* sustained while the policy is in effect. Bearing the aforesaid distinction in mind, the question arises as to whether Byrd's injuries were accidental

bodily injuries, irrespective of the means which brought the same about. It is undoubtedly true that Byrd in his work was doing what he intended to do, that is, operating the chipping hammer. It is equally true, however, that he did not intend, or expect, or design the result. This Court has defined the word "accidental" as used in policies of this character in two cases, that is to say, North American Accident Insurance Company v. Henderson, 180 Miss. 395, 177 So. 528, and New York Life Insurance Company v. Wood, 182 Miss. 233, 180 So. 819. The definition thus given the word "accidental" as used in policies of the character now under review is that the word means undesigned, unintended, unexpected, and unpremeditated. Applying this definition, we think that it must inescapably follow that the injuries suffered by Byrd were accidental bodily injuries and, therefore, within the coverage of the policy in question. Regardless of the fact that Byrd in the performance of his work was doing what he intended to do, it is manifest that his injuries as disclosed by the facts of this case were unexpected, unintended, undesigned, and unpremeditated. While the means employed by him were not accidental, the result which followed was accidental.

In the case of Ingalls Shipbuilding Corporation v. Byrd, supra, involving the same injury, and holding the injury to be compensible, we held that the resulting injury was an unexpected result. The appellee contends that this case is not applicable because it arises under the workmen's compensation act. We are cognizant of the fact that an injury may be compensible under the workmen's compensation act and yet not within the coverage of the particular provision of an accident insurance policy. It may well be that the injury is the result of a risk to which the claimant's employment exposes him and, therefore, compensible, and yet not within the coverage of an accident insurance policy. In this case, we are of the opinion that the injury was not only compensible

as held in the case of Ingalls Shipbuilding Corporation v. Byrd, supra, but that it is also within the coverage of the policy here involved. The holding in the case of Ingalls Shipbuilding Corporation v. Byrd, supra, that the injury was an unexpected result brings the injury within the category of an accidental injury. The injury was "undesigned, unintended, unexpected, and unpremeditated," and hence is within the coverage of the policy which insured against loss from accidental bodily injury. Had the provisions of the policy in question insured against loss from bodily injury suffered or sustained through accidental means, a different result might be reached. The Provisions of the policy here, however, are controlling, and hence we are of the opinion that the injuries of Byrd were accidental bodily injuries sustained while the policy was in effect, and are therefore within the coverage of the policy. For the reasons hereinbefore set forth, we are of the opinion that the trial court was in error in sustaining the appellee's motion and in entering a decree dismissing the original bill. The decree of the court below is, therefore, reversed and the cause remanded.

Reversed and remanded.

*McGehee, C. J.,* and *Roberds, Kyle,* and *Lotterhos, JJ.,* concur.