**Athaniel H. MOODY**

v.

**NEW YORK LIFE INSURANCE COMPANY.**

**No. 1253.**

United States District Court
S. D. Mississippi,
Hattiesburg Division.

April 26, 1958.

W. Carroll Gartin and James D. Hester, (Gartin & Hester) Laurel, Miss., for plaintiff.

Thomas H. Watkins of Watkins & Eager, Jackson, Miss., for defendant.

MIZE, District Judge.

The Plaintiff in this case brought this action on two policies of insurance issued by the Defendant, New York Life Insurance Company upon the life of Florida Redmond Moody, each in the amount of $5,000 and dated December 8, 1955. Plaintiff was beneficiary in each of said policies. The Defendant, New York Life Insurance Company, denies liability on each of said policies on the ground that Florida Redmond Moody gave false and fraudulent statements to the Company, upon which statements the Company relied when it issued such policies, and that said statements were material to the issuance of the policies and were false and known to be false. The Plaintiff has made a motion for a summary judgment and the Defendant has made a motion for a summary judgment.

There is no dispute about the facts, but a clear-cut issue of law appears upon the record. One or the other of the parties is entitled to a summary judgment, and after studying the record I have reached the conclusion that the Defendant is entitled to a judgment.

The facts of the case are that on or about October 20, 1955 Florida Redmond Moody applied in writing to New York Life Insurance Company for insurance in the face amount of $10,000 and in her application, which was attached to her policy, false statements were made. She stated that she had never had a surgical operation, that she had never been under observation or treatment in any hospital, that she had never had X-ray, electrocardiogram or other medical treatment, had never had or consulted a physician with reference to various diseases, including tumor or cancer, and had never been examined by any physician or treated by one who was not named in connection with her answers. These statements were false, but their falsity was not known to the Insurance Company until after the death of the insured, when it appeared from proofs of death that she had been treated by physicians, had been in a hospital only a few months before the application for the policy. Without going into details, she had been treated or examined by three physicians, had been in the hospital from June 26 until July 10, and while there X-rays were

made and an abdominal operation was performed upon her for the removal of a mass which was malignant. She died on or about October 19, 1956.

The policy dated October 20, 1955 was No. 25540044 and was issued, but never delivered to the insured. It had attached to it the application containing the false statements above enumerated. When the policy of October 20 was tendered to Florida Redmond Moody she told the New York Life Insurance Company that instead of having the policy for $10,000 she preferred to have two policies in lieu of this policy, each in the amount of $5,000 and these two policies are the policies now in controversy, one being No. 25575805 and the other 25575806, each in the face amount of $5,000 and dated December 8, 1955. To each of these policies last mentioned there was attached a photostatic copy of the application that was made for the original policy of October 20, 1955 and on the statements made in that application the Defendant Insurance Company relied, having no knowledge at that time that said statements were false. Because of the lapse of time after the written application of October 20, 1955 and December 8, 1955, the New York Life Insurance Company requested the said Florida Redmond Moody to execute a form designated as "Declaration of Applicant before delivery of new policy", which form was signed by Florida Redmond Moody on or about December 8, 1955. This "Declaration of Applicant before delivery of new policy" was to the effect that she declared that since making the statements and answers contained in Part 2 of her application for insurance dated October 20, 1955, she had not consulted or been treated by any physician, nor had there been any physical change in her condition, and that she had not been examined by any other insurance company since October 20, 1955, and this document contains this statement: "The foregoing declaration is an amendment to and is hereby made a part of my said application and I hereby agree that the Company, believing it to be true, shall rely and act upon it."

There were no false statements contained in this declaration of applicant before delivery of new policy and it may be referred to as Part 3 of the application. Part 1 of the application, which was attached to the original policy and to each of the policies here in controversy, has to do only with the name, when to take effect, residence, occupation, etc., and is not involved. Part 2, which was attached to each of the three policies, is that part of the application containing the false statements. The "Declaration of Applicant before delivery of New Policy" designated as Part 3 was not attached to either of the policies and for the failure to attach that part of the application to the policies, the Plaintiff contends that the Insurance Company is precluded from contending or asserting that the statements in that application were false.

It is admitted by the Insurance Company that the two policies in controversy would not have been issued unless Florida Redmond Moody executed the "Declaration of Applicant before delivery of New Policy", and to that extent this part of the application is a material part of the contract. The New York Life Insurance Company would not have issued these two policies if the insured had declined to sign that declaration, nor would it have delivered as late as December 8 the original policy.

When the proofs of loss came in the New York Life Insurance Company discovered for the first time the falsity of the answers of the insured, which were very material to the issuance of the policy, and immediately notified the beneficiary that it elected to cancel the policies and tendered him all premiums that had been paid, together with interest thereon. This was declined by the Plaintiff and suit was thereupon filed on the two policies. Plaintiff relies upon Section 5684 of the Mississippi Code of 1942 on his motion for a summary judgment in favor of the Plaintiff and in opposition of the motion for summary judgment for the Defendant. This section is as follows:

"§ 5684. Life companies—copy of application of insured to accompany policy of insurance.

"All life insurance companies doing business in the state of Mississippi shall deliver to the insured with the policy, certificate or contract of insurance in any form a copy of the insured's application, and in default thereof said life insurance company shall not be permitted in any court of this state to deny that any of the statements in said application are true."

And relies to a large extent upon the Mississippi authorities of Aetna Life Insurance Co. v. McCree, 174 Miss. 242, 164 So. 223; New York Life Ins. Co. v. Rosso, 154 Miss. 196, 122 So. 382; Metropolitan Life Ins. Co. v. Scott, 160 Miss. 537, 134 So. 159; Sovereign Camp W. O. W. v. Farmer, 116 Miss. 626, 77 So. 655; Great Southern Life Ins. Co. v. Burwell, 5 Cir., 12 F.2d 244; none of which determine with accuracy the question now before the Court.

The determining solution of the question is whether or not the Insurance Company can take advantage of materially false statements made in those parts of the application which were attached to the policies as delivered when it failed to attach a copy of the Declaration of Applicant before delivery of New Policy, in which there were no false statements.

In Aetna Life Ins. Co. v. McCree, 174 Miss. 242, 164 So. 223, the Court stated in substance that the purpose of the statute enabled the insured to determine at any time by inspection of his policy whether there were any errors contained therein through inadvertence or otherwise, and to correct them or to disclose the true facts to the Insurance Company while he was carrying the insurance and before he became uninsurable.

The policies of insurance that were delivered to Florida Redmond Moody stated that this policy and the application for it, a copy of which was attached thereto and made a part thereof, constituted the entire contract. This statement of the policy was a part of the agreement and

looking to the purpose of the statute it will be seen that it was a substantial compliance with the statute. The application that was attached to the policy, which the parties agreed would constitute the entire contract, demonstrated to the insured that she had made false statements, known to be false by her, and under those circumstances it was her duty to have corrected her erroneous statement. She was in possession of the policies and under the law of Mississippi one in possession of policies is charged with the knowledge of the contents thereof, whether he read them or not.

The right to make contracts by competent parties is a principle of the life insurance business and the parties are free to make contracts as they see fit, provided it is not prohibited by law or public policy. These parties, Florida Redmond Moody and the New York Life Insurance Company, agreed that the application attached to the policy, along with the policy, constituted the entire contract. It was in these applications which were attached to the policies that the false statements were made. The power to make such contracts is announced by the Supreme Court of Mississippi in the following cases: Berry v. Lamar Life Ins. Co., 165 Miss. 405, 142 So. 445, 145 So. 887; Lavender v. Volunteer State Life Ins. Co., 171 Miss. 169, 157 So. 101; Cauthen v. National Bankers Life Ins. Co., Miss., 88 So.2d 103.

The Defendant would not have been permitted to rely upon the false statements in the application if the false statements had been contained in that part of the application that was omitted. This was so held in the case of New York Life Ins. Co. v. Rosso, 154 Miss. 196, 122 So. 382. In that case there was no proof of fraud on the part of the applicant in making the original application and the Court held that the failure of the Company to deliver with the policy that component part of the application containing the false statements precluded the Company from defending on that ground. The authority nearest in point from the Supreme Court of Mississippi is that of

Metropolitan Life Insurance Company v. Scott, 160 Miss. 537, 134 So. 159, 161. In that case the Company did not attach the application to the policy when it was delivered. However, the policy itself contained the same representations that had been embodied in the unattached application. In that case the insured argued that Section 5684 precluded the Company from showing the falsity of any representations contained in the application, even though the policy actually contained the same representations. The Insurance Company in that case relied upon the policy itself and not upon false statements contained in the application which was not attached. The Court said:

"One evident purpose of the statute requiring the delivery to the insured of a copy of the application is to exclude or eliminate from the contract an application, a copy of which is not delivered to the insured with the policy, and to render ineffective any defenses or attempted defenses based upon anything contained in such application, but it does not follow that a failure to incorporate in or attach to the policy a copy of the application will preclude the company from relying on any defenses available to it under the terms of the policy. * * * The policy was complete in itself, and purports to contain in plain language all the terms, conditions, and stipulations of the contract, and we do not think the company is precluded from relying on the express conditions and stipulations appearing on the face of the policy, by reason of the fact that the application contained representations or stipulations in reference to the same subject-matter. When the company chose to ignore the statements and representations appearing in the application, and incorporated in the policy in plain terms the conditions and stipulations upon which its validity should rest, and the policy was accepted by the insured as constituting a contract, it had the right to make any defenses it might have under the terms of the policy, without reference to such application."

The statute of Mississippi undoubtedly was not intended to permit a person to perpetrate a fraud. If given the construction that is contended for by the Plaintiff herein, it would permit that very thing to be done. Under the facts as disclosed by this record the insured had recently had a very serious operation and undoubtedly knew that she was in a serious condition. She had just come out of the hospital in July and had every opportunity to determine from the policy that she had made essentially and materially fraudulent misstatements of fact. She alone was the one who knew they were false and she alone had the opportunity to correct them before her death, but failed and neglected so to do.

Counsel for the Plaintiff and the Defendant cite many authorities outside the State of Mississippi bearing on this question and there is a conflict among the authorities outside the State of Mississippi, but I do not deem it necessary to refer to those authorities in detail. The law of the case is governed by the statutory law of Mississippi and the decisions of the Supreme Court of Mississippi construing that statute. I am of the opinion that under the facts of this case and under the law of Mississippi as inferred from the statute and decisions of the Supreme Court, the Defendant is not precluded from taking advantage of the false and fraudulent statements made by the insured to the Company and upon which the Company relied and issued the policies.

Judgment may be entered sustaining the motion for a summary judgment of the Defendant and overruling the motion for summary judgment of the Plaintiff.